## THE PEOPLE v. STONECIFER.

In a capital case, where a juror on his examination on his *voir dire* by defendant, stated that he had formed and expressed an unqualified opinion, etc., the defendant should have challenged him for cause; but where he did not challenge him, but passed him to the prosecution for examination, on which the juror stated that his opinion was formed by reading the newspapers, whereupon the prosecution accepted the juror, and the defence desired to question juror further for cause, which was denied, but a peremptory challenge allowed, *Held* not to be error.

Even if not in strict conformity with the statute, the Court below must of necessity be vested with a reasonable discretion in determining the preliminaries of a criminal trial.

On a trial for murder, evidence of a difficulty between the prisoner and other persons connected with the deceased on the same day, prior to the killing, and at which the deceased was not present, is admissible for the purpose of showing a conspiracy upon the part of the prisoner and others against the deceased and others, and of connecting the two difficulties together.

If the Court below believed the connection between the two acts established, the testimony should have been allowed to go to the jury; otherwise excluded.

Where the evidence showed that the prisoner commenced the affray in which he took the life of the deceased, *Held* that the instruction asked for by defendant, "that if defendant had reason to believe and did believe that he was in great danger of losing his life, and under that belief killed the deceased, he was justified," was properly refused.

So, also, as to the instruction asked for, "that if the jury have a reasonable doubt whether the killing was in the heat of passion, created by great provocation, etc., or in self defence, they should acquit;" because as the presumption of guilt arises from the killing, and the *onus probandi* is on the defendant, the guilt cannot be disproved by a doubt, but by preponderance of testimony.

A citizen of this State who has resided in the county fourteen days, and then been absent for some months from the State with the intention of returning to reside in the county, and has returned and resided some fourteen days in the county, is a competent juror, his residence dating from his first residence and not from his return.

Affidavits to the incompetency of a juror must be embodied in a bill of exceptions, or they will not be examined by the appellate Court.

A party who accepts a juror, knowing him to be disqualified, is estopped from afterwards availing himself of such disqualification.

Appeal from the District Court of the Sixth Judicial District.

The defendant was convicted of the murder of Abiel Richardson and appeals on the following assignments of error :

*First.*—That Knox was called as a juror, and being sworn on his *voir dire*, stated on his examination by defendant's counsel, that he had formed and expressed an unqualified opinion as to the guilt or innocence of the prisoner.    After the asking of other questions, defendant's counsel, without interposing any challenge for cause, passed the juror to the prosecution for examination, upon which examination the juror stated that he had formed his opinion from accounts read in the newspapers.    The prosecution made no objection, but accepted the juror; whereupon defendant's counsel desired to further examine him for cause, which was objected to and the objection sustained on the ground that the defendant, by passing the juror to the prosecution, and the State accepting him, had waived his right to challenge the juror for

cause; but the Court informed the defendant that he might take a peremptory challenge, to which ruling the defendant excepted.  Before the jurors were called, the Court instructed the defendant, that if he intended to challenge any particular juror he might do so when the juror appeared and before he was sworn.  The Court also · informed the counsel for defendant that all challenges for cause must be first taken by defendant, and then by the State; but that defendant could take a peremptory challenge at any time before the juror was sworn.

*Second.*—That on the trial the prosecution called John Huckins as a witness for the purpose, among others, of proving the circumstances of a difficulty between the witness and the defendant, and Cashall and Smith, indicted with him for the murder, occurring on the same day, and before the killing of Richardson, at which difficulty Richardson was not present.  The evidence was objected to by defendant, but the counsel for the prosecution having stated that he expected to connect the two difficulties, and to show a conspiracy, the Court overruled the objection, to which the defendant excepted.

The evidence of Huckins was in effect that he and Richardson were part proprietors of, and runners for, " the Opposition Stage Co," and that Stonecifer and Smith were runners for " the California Stage Co.," and Cashall for the Marysville boats.  That on the same day and before Richardson was killed, witness had a difficulty with Stonecifer, Cashall and Smith, about the stage companies, on the levee, in Sacramento City, while engaged in " running " for his line, in which witness was attempted to be driven from the levee under reiterated threats, and finally knocked down and beaten by Smith with a pistol handed to him by Stonecifer; that as soon as witness got away, he went to the Merchants' Hotel, where he found Richardson, whom he requested to find a policeman to arrest the defendants.  After the evidence was concluded, defendant moved to strike out the evidence as irrelevant, and so to charge the jury, which the Court refused to do, and defendant excepted.  The Court charged the jury to disregard the testimony of Huckins, relative to the difficulty between him and Stonecifer, Smith, and Cashall, unless they believed that the evidence connected that difficulty with the one in which Richardson was killed.  The testimony of other witnesses established the fact that Richardson went to the levee, when Smith went up to him and asked him what he was doing there, at the same time using abusive epithets, shoving against him, and treading on his toes; that Richardson told him several times to keep away, and at last picked up a piece of board and knocked Smith down; whereupon Stonecifer jumped upon Richardson and stabbed him two or three times with a knife, Cashall at the same time jumping upon Richardson; that Richardson shook them off and pursued Stonecifer into a bar-room, striking at him with the board in his hand; that Stonecifer turned in the far end of the bar-room and struck Richardson once again with his knife; the testimony of the surgeons attending Richardson, and making the *post mortem* examination shows that he received four wounds, and that his death was caused by one or more of them.

The third assignment of error is the refusal of the Court to charge the jury, as set forth in the opinion of the Court, in which also appear the facts relative to the other assignments of error as to the competency of the juror, Palmer, as a resident of the county. Palmer stated that he was an acquaintance of the defendant. He was accepted by both the prosecution and defence as a juror, upon his statement on his *voir dire.*

*Jas. H. Hardy* for Appellant.

The District Court erred in refusing the defendant the privilege of challenging the juror, Knox, for cause, inasmuch as defendant retained the right to challenge at any time, and never having interposed one challenge, he had waived no right by passing the juror to the prosecution. See Compiled Laws, p. 465, § 341; also, p. 468, § 360.

The fact that the defendant had the privilege to interpose, and in fact did interpose a peremptory challenge to the juror, did not cure the error. Because by being compelled to exercise the privilege in that instance, he may, from fear of exhausting his challenges, have accepted some juror whom he would otherwise have challenged. Lithgow *v.* Commonwealth, 2.Virg., case 292.

The Court erred in admitting the testimony of Huckins concerning the first fight, when Richardson was not present. The proposal of the prosecution to connect the two difficulties did not authorize the admission of the testimony,

The Court should have stricken the evidence of Huckins out, and have instructed the jury to disregard the evidence.

The Court should have given the instruction asked for.

If the defendant had reason to believe, and really did believe that he was in imminent danger of losing his life, or incurring serious bodily harm, and really, in good faith, acting under that belief, killed Richardson, he was justified. If this is not law it would be difficult to form an idea of what would be a justifiable homicide. Any other doctrine would subvert the principles of self defence. Wharton's Am. Cr. Law, pp. 395, 396; 2 Archbold's Cr. Pr. and Pl., pp. 224, 226; Selfridge's Trial, p. 160; 1 Russell on Crimes, pp. 485, 699; The People *v.* Shorter, 2 Comstock, 193.

If the jury have a reasonable doubt whether the killing was in the heat of passion, created by a provocation supposed to be sufficient to create an irresistible passion in a reasonable person, or in defence of his life or person, they should acquit.

A reasonable doubt is that moral uncertainty which leaves the mind of the juror in that state, that he cannot say to a common certainty, upon a review of all the facts, that the defendant is or is not guilty. Wharton's Am. Cr. Law; Starkie on Ev.

The juror, U. C. Palmer, was not an elector of the county, and therefore should not have sat on the jury, and his being on the jury renders the verdict a nullity. The People *v.* March, 5 Cal. Rep.

Tweedy *v.* Brush, Kirby 13; Irvin *v.* Kean, S. & R., 14, p. 292;

The State v. Babcock, 1 Conn., 401; Boust v. Beeker, 6 Johnson, 332; Dickson v. Richards, 7 Howard Miss.; Dowlin v. The State, 5 S. & M., 664; Guykowski v. The People, 1 Scammon, 476; Sellers v. The People, 3 Scammon, 412; Cain v. Cain, 1 B. Monroe, 213; Day's Case, 3 Grattan, 629; Hogshead v. The State, 6 Humph., 59; Flint River S. B. Co. v. Foster, 1 Georgia, 194; Munroe v. The State, 5 Georgia, 85; The State v. Sutton, 4 Gill., 494; Venwan v. Harwood, 1 Gilman, 659; Baxter v. The People, 3 Gilman, 368; Busick v. The State, 3 Ohio, 198; Wade v. The State, 12 Geo., 25.

It is a conceded proposition that a party cannot waive a jury trial.

"A Jury" is a technical term, and there is in criminal cases but one number for a jury, and the jurors must all be qualified.

*Foote, Sanders and Ferguson*, for Appellant.

*Wm. T. Wallace*, Attorney General, for the State.

"All challenges to an individual juror except peremptory challenges must be taken, first, by the defendant, and then by the people," etc. § 359, p. 468, Compiled Laws.

The district attorney accepted of the juror. The prisoner then proposed to examine the juror further.

The statute means that if he desire to challenge for cause he must do so before the State has an opportunity of doing so.

When it was proposed to examine John Huckins, the district attorney stated to the Court that he expected to connect the two difficulties and show a conspiracy. This was certainly proper.

It is objected that one of the jurors who sat on the trial, to wit: U. C. Palmer was not a citizen of the county, or a lawfully qualified juror, he having resided only fifteen days in the county when he was sworn as a juror.

The affidavits offered are loose affidavits; they are not embodied in a statement nor bill of exceptions, nor is there anything to show that they were read or offered to be read to the Court below.

The appellant ought to be responsible for all uncertainty and omission in his bill of exceptions, etc. Rogers v. Hall, 3 Scammon, p. 6.

But the bill of exceptions proceeds: "The said juror, U. C. Palmer, further stated on his examination that he resided and worked two weeks in Sacramento City before his departure for New York, and also worked in Sacramento City from the time of his arrival to the time of trial, and that he considered this his home,

He was thus an actual resident of Sacramento fourteen days before his visit to New York, and fourteen days after his return, and before the trial, making twenty-eight days actual residence in Sacramento, with months of constructive residence.

But if it were otherwise, and if a want of technical qualification, such as this were allowable as a ground of reversal, it ought, at least, to appear either, first, that the prisoner made a challenge which was overruled; or, second, that he was ignorant of the fact which would

have been ground for challenge for cause, if he had known it: otherwise the prisoner will trifle with the Court and speculate upon the verdict.

Take the case at bar. No affidavit of the prisoner or of any person whomsoever is produced to show that at the time he accepted Palmer as a juror he was unaware of the fact (if it be a fact) that he was a resident of Sierra county. Palmer (the juror) swore that he was an acquaintance of prisoner. The presumption may be fairly indulged that the prisoner did know the fact. He has been tried and convicted, and now asks this Court to give him another chance of escape because in accepting his friend and acquaintance from Sierra county he waived a substantial right, which the Court will not, in tender mercy, allow him to do.

For authority to sustain this view, see 2 Blackford, 114; 2 Bay, 153, 154; 17 Johnson, 133; 6 Greenleaf, 307; 4 Dallas, 353; 11 Pickering, 275; 3 Stewart, 454 and 475; 1 Tyler, 150; 2 McCord, 12; 6 Missouri, 426; 3 A. K. Marshall, 330; 1 Binney, 27; 4 Bibb, 272; 4 Littel, 118; 4 Barn. & Ald., 430; 8 Barn. & Cress, 417; 1 Pickering, 43; 14 Mass., 205; 3 Greenleaf, 215; 9 Pick., 572; 12 East., 230; 6 Sergt. & Rawle, 395; 9 Mass., 107; 7 Cranch, 290; 7 Watts & Sergt., 415; 13 Wendell, 351; 1 Scammon, p. 130, Wickersham *v.* The People.

A perusal of the record will show that the charge of the Court covered the whole case and was correct.

The opinion of the Court was delivered by Mr. Chief Justice MURRAY. Mr. Justice HEYDENFELDT and Mr. Justice TERRY concurred.

The prisoner was convicted of the crime of murder.

The first error assigned by the appellant is the refusal of the Court below to allow him to re-examine the juror Knox, after he had been called and examined, first by the prisoner and afterwards by the State.

The appellant contends that, by this ruling, he was forced to a peremptory challenge, when, if he had been allowed to examine him further, he might have been excluded for cause. The juror had already stated that he had formed and expressed an unqualified opinion as to the guilt or innocence of the prisoner, and if the defence had wished, they might have examined him further, or have challenged him for cause. The order in which challenge shall be taken is pointed out by the 359th section of the Criminal Practice Act, and the proceeding in this case seems to have been in conformity thereto. Even if such were not the case, the Court below must, of necessity, be vested with a reasonable discretion in determining the preliminaries of a criminal trial, and there is no evidence before us of an abuse of discretion.

The second error assigned, is the admission of the testimony of Huckins concerning the first fight, at which deceased was not present; this testimony was introduced to show a conspiracy upon the part of the prisoner and others against the deceased and others, and to connect the two difficulties together. An examination of the testimony of

Huckins, taken in connection with the evidence of the principal witness for the prosecution, would justify the inference that the prisoner, together with Smith and Cashall, had conspired to drive Richardson and Huckins from the levee, and that their acts, from the whipping of Huckins down to the killing of Richardson, were a continuation of the same unlawful design. If the Court below believed these unlawful acts were connected, it was its duty to allow the testimony to go to the jury subject to their decision; if, however, there was no testimony, or not sufficient, in the mind of the Court, to establish a connection, then the evidences should have been excluded.

In this view of the case, it is apparent that the Court did not refer to the admissibility of the evidence, but only to its sufficiency to establish the fact to the jury.

The next error assigned, is the refusal of the Court to charge the jury : "1st, That if the defendant had reason to believe, and did really believe that he was in imminent danger of losing his life, or incurring serious bodily harm, and really in good faith acting under that belief, killed Richardson, he was justified. And 2d, If the jury have a reasonable doubt whether the killing was in the heat of passion, created by a provocation supposed to be sufficient to create an irresistible passion in a reasonable person, or in defence of his life or person, they should acquit." Both these instructions were properly refused.

The first is bad, because it assumes that the prisoner was nowise in fault, and has no reference to the circumstances which induced the belief of imminent danger. It will not do to say that a party may commence an affray, and, when he is about to suffer the penalty of his temerity, he may take the life of his adversary to avert the danger that threatens him; or that his cowardly fears of danger, if really entertained, would justify him in taking the life of another, without regard to the circumstances which excited those fears. The circumstances must be such as would excite reasonable apprehensions on the part of men of ordinary judgment and prudence. The second instruction is bad, because, the killing being admitted, the presumption of guilt arises, and the onus is laid upon the prisoner of disproving the guilt; this cannot be done by raising a doubt in the minds of the jury, but by establishing the fact by preponderating proof. (See the People v. Millgate.)

The next error assigned, is as to the competency of the juror, U. C. Palmer. So far as we are able to judge from the answers of the juror (touching his citizenship,) as set forth in the bill of exceptions, we are of opinion that he was a competent juror. In the first place he swears that he was a citizen of the State, (which fact is not disputed,) as such a residence of fourteen days in Sacramento County, and an absence of several months from the State with the intention to return to Sacramento City as his home, together with the fact that he did return and had resided in this city from the time of his return up to the time of trial, although such residence was for the brief period of fourteen or fifteen days, is sufficient to constitute him a resident of the county. If he had resided but one day with the bona fide intention of making

the county his home, and then left with the *animus revertendi*, and actually did return, his residence would have dated from the day of his first settlement or arrival in the county, and not from the date of his return.

The language of the juror may be somewhat obscure, but we are bound to receive the construction adopted by the Court below, unless it is shown to our satisfaction, by the appellant, that he was incompetent. It is contended, however, that the incompetency of the juror is clearly established by the affidavit produced on the motion for new trial.

The difficulty of this position arises from the fact that these affidavits are not embodied in a bill of exceptions, so as to show that the Court below ever passed upon them, and therefore we are precluded from examining them, as we have repeatedly decided before. For aught we can discover from the record, the Court may never have seen them, or if it did, may have disregarded them for some sufficient reason not made apparent to us.

This disposes of the prisoner's case; but on the argument of this cause, our attention was drawn to a former decision of this Court, in the case of the People *v.* March, in which the doctrine was held, that a party on trial, charged with a capital offence, could not waive an objection to the incompetency of a juror, even if the fact were personally known to him. That decision was made without any argument upon the points, and upon examination, does not appear to be supported by the authorities.

The argument in the case of March proceeded on the ground that, in case the disqualification of the juror was unknown to the prisoner, by accepting him he waived, by implication, the disqualification, and that there is no difference between an implied and an express waiver.

The error in this argument consisted in assuming that the failure to challenge the juror was an implied waiver or assent on the part of the prisoner, when, in fact, no implication arises whatever from it.

Upon a full examination of all the authorities, we are satisfied that a party who accepts a juror, knowing him to be disqualified, is estopped from afterwards availing himself of such disqualification.

In every case that we have examined, in which a new trial has been granted on this ground, it has been shown that the prisoner was ignorant of the objection to the juror, and in several cases it has been held, that unless it appear to the Court that the prisoner really was ignorant of the juror's disqualification, the verdict will not be set aside. In fact, on a more careful examination of the subject, it will be manifest that any other rule would be entirely destructive of the whole administration of criminal jurisprudence, and that no conviction could ever be obtained where the accused had either wealth or friends.

In conclusion we would remark that we are happy that so early an opportunity has presented itself for correcting our former decision, particularly as the question is not necessarily involved in this case, having already shown that the affidavits on which the prisoner relies to establish the incompetency of the juror, are not properly before us.

Judgment affirmed, and the Court below directed to fix a day to carry the sentence into execution.