## THE PEOPLE *v.* HONSHELL.

Affidavits in support of a motion in the Court below, will not be considered by this Court, unless they are incorporated in the statement or bill of exceptions.

The defendant being on trial for the crime of manslaughter, in killing John M. Vance, (who had entered upon the premises of defendant, and commenced the erection of a house thereon, and in the attempt of defendant to remove Vance a fight ensued, in which Vance was killed,) offered to introduce in evidence a deed of the land from one Crostly to defendant and his partner, and also to prove that Crostly had possession of the land eight months prior to date of the deed, and that defendant went into possession under the deed, and had held possession eight months previous to Vance's entry : *Held,* that such proof was not admissible.

Defendant had no lawful right to turn Vance off by force, conceding that he had the legal title to the land.

An instruction of the Court to the jury must be adapted to the facts of the case.

An instruction which would, in its terms, require the jury to acquit the defendant upon the ground that the deceased fired first, without any regard to the circumstances under which the shot was fired, is erroneous.

If A go to the house of B, who has taken possession of his land and built a house thereon, for the purpose of forcibly putting him out and tearing down the house, it is an unlawful act ; and if A kills B in pursuing that purpose, it is murder or manslaughter, according to the facts of the case.

Where the evidence showed that the prisoner went to the house of the deceased for the purpose of forcibly removing him from land claimed by the prisoner, and a fight ensued between them, which resulted in the death of the deceased : *Held,* that the instruction asked for on trial by the defendant, " that if the jury believe, from the evidence, that the defendant fired the fatal shot at the time, and had reasonable cause to believe his life was in danger, they must find a verdict of not guilty," was properly refused.

It was not error in the Court below to give the following instruction : "It was no justification for the defendant to say that the land, on which Vance (deceased) was building a house, was his, or that he had some claim to it." This instruction could not prejudice the jury against defendant, or injure him, conceding that it was unnecessary.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

The defendant was indicted for the crime of manslaughter, in killing John M. Vance.

Honshell and Lee were copartners in farming.   They owned and were in possession of a tract of land in San Joaquin county, which they lived upon and cultivated.   Adjoining this tract was another tract, or quarter-section, of land, fenced on three sides, which they claimed to own by purchase and deed of conveyance from Crostly to them.   Shortly after the date of the deed,

Honshell and Lee took possession of this tract and built a small cloth house on it.   On the fourth day of January, 1858, John M. Vance hauled a wagon-load of lumber upon this last-mentioned tract, and about sundown of that day commenced the erection of a house thereon.   On the sixth, the house was finished, except the hanging the doors and putting in the windows.   On that day, Honshell complained to his neighbors that Vance had "jumped" his land, and said that if he went to law to recover possession and gained the suit, he (Honshell) would have the cost to pay, as Vance had no property; but he would consult his partner, Lee, as to what course they should take to get Vance off.   About two o'clock of the sixth day of January, 1858, the defendant and his partner, Lee, went to the house erected by Vance, and Lee said to Vance that he had come to see if Vance would accept the offer he made him in the morning, which was that if Vance would move away, he would pay him for the lumber, find him a place where he would not be disturbed, and if he (Vance) wanted to haul away the lumber, he would let him have a team.   Vance said something about land.   Honshell also said to Vance, "John, you should not have done such a thing, and I am going to take it down."   Lee, who had an axe in his hand, made an attempt to go into the house.   Some of the witnesses say, that Vance seized hold of the handle of Lee's axe, and pulled him back, whilst others, who stood nearest, and had the best chance to see what did take place, say that Vance stepped in before him, reached in and got an axe, and drew it on Lee.   At this time, Honshell was standing just at one side of the door; he took his pistol from his bosom and held the muzzle down towards the ground, thereupon Vance immediately drew his pistol and fired at Honshell, who returned the fire.   The three witnesses, McFarlands and Chesnut, who were present, testify that Vance fired first, whilst the other witnesses, who were some two hundred yards distant, say that Honshell fired first. Several shots were fired, and both Vance and Honshell were wounded.   Vance died of his wounds on the eighth day of January, 1858.   Honshell was so badly wounded that he had to be carried home.

On the trial, the defendant offered certain proof, which was ruled out, and which appears in the opinion of the Court.   The instructions asked by the defendant, and also those given, with the exception of the second and third, appear in the opinion of the Court.   The second and third are as follows :

" 2. That although a trespass will not justify a killing, yet, if the trespasser first attempts to kill the person in possession, he would be justified to defend himself by all the means in his power.

" 3. That if the jury believe from the evidence that the defendant fired the fatal shot at the time (and had reasonable cause

to believe) his life was in danger, they must find a verdict of not guilty."

These instructions were asked by the defendant. The Court refused to give them, and defendant excepted. The jury returned a verdict of guilty, and the Court sentenced the defendant to two years and six months' confinement in the State-prison. The defendant moved the Court to set aside the judgment, and grant a new trial, which was refused, and the defendant appealed to this Court.

*Booker, Burges & Hall,* for Appellant.

1. The judgment should have been arrested on the motion made in the District Court, and counsel here refers to the affidavits and other proof of record, that one of the grand jurors was incompetent. Defendant knew not in season to take the exception. Archbold Cr. Pr., 178, and notes.

2. The instructions of the Judge to the jury were incorrect—manslaughter erroneously defined. Comp. Laws, p. 641, § 22.

One of the instructions of the Judge was founded upon a state of facts that did not exist in the case; there is no evidence that Honshell went to the house with the intention of tearing it down. Archbold Cr. Pr., 178, and Waterman's note.

3. The instructions of the Judge, that it was no justification for defendant to say "the land, on which Vance was building a house, was his," were erroneous in law, and violated the first principles of defence of life and property. Comp. Laws, p. 425, §§ 15–17.

5. From the facts in the case, the killing was justifiable. Comp. Laws, 641–2; Russell on Crimes, title, "Murder and Manslaughter;" Roscoe, ib.; Archbold Cr. Pr., 178, and notes.

It was in self-defence. Statute, §§ 30–3; Russell on Crimes; Roscoe, ib.

6. The Judge should have granted a new trial, both in law and fact. Archbold Cr. Pr., 178, and Waterman's notes.

*Heydenfeldt and Benham* for Appellant, made the following additional points:

The Court erred:

2. In refusing evidence that the defendant owned the premises where the killing occurred.

3. In refusing to give the first, second, and third instructions asked for by the defendant's counsel.

6. Verdict should have been set aside, because deceased used deadly weapons when no assault had been made upon him which warranted him to do so, and which became, in any view of the evidence, a trespass *ab initio.*

7. Verdict should have been set aside, because defendant killed deceased in repelling an attack made by deceased after

the first fight was over and defendant had retreated.  The kill-
ing was *chance medley.*

*Attorney-General* for Respondent.

The testimony as to ownership of the land was properly ex-
cluded.  It could have only been introduced to disprove premed-
itation, which could not have become a question in this case, as
the defendant was on his trial for manslaughter, an offence
which precludes premeditation.  Wood's Digest, p. 331, §§ 22,
23, 24, 25.

The instructions asked for by appellant, and refused by the
Court, are not full enough and do not apply to the case, there-
fore they were properly refused.  People *v.* March, 6 Cal., 543.

In reference to those instructions, the following cases are ap-
plicable.  People *v.* Roberts, 6 Cal., 217; People *v.* Stonecifer,
Ibid., 405; People *v.* Moore, 8 Cal., 90; People *v.* Hurley, Ibid.,
390; People *v.* McMakin, Ibid., 548.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J.,
concurring.

Indictment and conviction for manslaughter.

1. The first error assigned by the defendant is that the Court
below erred in refusing to arrest the judgment, upon the ground
that one of the grand jury was an alien.

The affidavits in support of the motion are not included in the
bill of exceptions, and we can not consider them.  (The People
*v.* Stonecifer, 6 Cal. Rep., 411.)

2. On the trial, the defendant offered in evidence a deed of the
land from one Crostly, to defendant and his partner, Lee, and
offered to prove that Crostly had possession of the land some
eighteen months before he sold to Honshell and Lee; and that
the latter went into possession under the deed, and had posses-
sion of the same for some eighteen months previous to the entry
of the deceased upon the land.  This evidence was rejected by
the Court, and this is assigned as error.

We think there was no error in refusing this evidence.  The
title to the premises in dispute was not properly involved.  It
was shown by the testimony that the land was fenced on three
sides, and open on the fourth; that Honshell and Lee resided
upon another tract near this, which was enclosed and cultivated,
and had only put up a small cloth shanty on this, which was not
occupied.  The deceased, Vance, entered upon the disputed pre-
mises with a load of lumber, about sundown on the fourth of
January, 1858, and during that night partly put up a small
house, ten feet square.  He continued to work on the house on
the fifth, and slept in it that night.  On the sixth, he further
continued to work at the house until two o'clock, P. M., when he
was killed.  At this time, the house was finished, except the

door and window.  Under those circumstances, Honshell and Lee had no lawful right to turn Vance off by force, conceding that they had the legal title to the land.

3. The counsel of the defendant asked the Court to instruct the jury " that if they believed from the evidence that Vance fired first upon Honshell, then Honshell would be justified in returning his fire," which was refused by the Court.

This instruction was erroneous, because it was too narrow in its terms, and not adapted to the facts of the case.  It required the jury to acquit upon the simple ground that Vance fired the first shot, without any regard to the circumstances under which the shot was fired.  There was ample evidence tending to show that Honshell and Lee went with the predetermination to expel Vance, and tear down the house by force, if required.  Lee went armed with an axe, and Honshell with a club and revolver; and while Lee was advancing to the house with his axe drawn, as if to strike off the boards, Vance resisted by seizing the axe. At this moment Honshell drew his pistol, and held it pointed downwards, but in readiness to use it, and Vance then instantly drew his pistol and fired.  The testimony is conflicting, some of the witnesses stating that Honshell fired first; but the most favorable for the defendant prove that he drew his pistol first, and while his companion was in the very act of advancing upon the house with declared intent to demolish it.  This case, in its essential circumstances, is very similar to the case of the People *v.* Payne, and the People *v.* McMakin, (8 Cal. Rep., 341, 547.)  If Honshell and Lee went with the intention of using such force as might be required to expel Vance, and demolish the house, and were in the act of doing so, then Vance had the right to resist by force.  He was not bound to wait till Honshell had pointed his pistol at him before he fired.  The Court very properly instructed the jury that " if the defendant went to the house of Vance for the purpose of forcibly putting him out, and tearing it down, this was an unlawful act; and if he killed Vance in pursuing that purpose, you should find a verdict of guilty."

4. The second and third instructions asked by the defendant are based substantially upon the same ground as the first, and open to the same objections; and were properly refused.  The third instruction was almost identical with one of the instructions asked in the case of the People *v.* Stonecifer, (6 Cal. Rep., 405,) and which this Court held was properly refused.

5. The Court instructed the jury that " it was no justification for the defendant to say that the land, on which Vance was building a house, was his, or that he had some claim on it."

One of the learned counsel for defendant insists that the Court below erred in giving this instruction, after having refused the evidence offered to prove the ownership of the premises in Honshell and Lee; that this instruction imputed to the defend-

·ant the insolent position that he had the right to kill any man who trespassed, and thus prejudiced the jury against him; while the intention of the defendant in offering the testimony was to show that he was properly on the premises, and to rebut the idea that he went there to kill the deceased.

But we think in this the counsel is mistaken. We can not think that the testimony was offered for this purpose. The fact that the title to the land was in the defendant and Lee, would go to show that they went there for the purpose of forcibly expelling Vance, as it would show a *motive* for doing so. There can be no doubt as to the intention of the defendant in offering that testimony, as his counsel who defended him in the Court below, in their brief filed in this Court, expressly place the alleged error of the District Court in refusing to admit the testimony, upon the ground that it "violated the first principles of defence of life and property." We can not see how the instruction could injure the defendant, even conceding that it was unnecessary. It was, however, stated in the testimony that defendant and Lee claimed the land.

6. The Court refused to set aside the verdict. We think there was no error in this, as the testimony was conflicting.

The seventh and eighth assignments of error are substantially the same as the sixth. The evidence was sufficient to sustain the verdict, and the Court committed no error in refusing to set it aside.

Judgment affimed.