## MACKEY *v.* THE PEOPLE.

GRAND JURY — *of the power to summon them.* The statute which provides that grand jurors shall be selected by the board of county commissioners (R. S. 387), does not exclude the common-law method; and if, after the regular panel has been discharged at a term of court, an exigency arises for another, a second panel may be selected and summoned by an open venire directed to the sheriff.

*Of the number.* Under the statute (R. S. 390) which provides that a grand jury shall consist of not less than 16 nor more than 23 persons, 21 is a sufficient number.

VENIRE — *whether it must appear of record.* Although the venire under which jurors were summoned may be inserted in the record if there is any reason for doing so, its absence therefrom is not ground for reversal.

MANSLAUGHTER — *upon conviction for, malice not in question.* If, upon an indictment for murder, the prisoner be convicted of manslaughter, objection cannot be made to the charge of the court in respect to malice, because the jury find that the killing was without malice.

INSTRUCTIONS TO THE JURY — *error cannot be corrected.* An erroneous instruction is not cured by another, covering the same point, which is correct.

*Reasonable doubt.* An instruction to the jury that a reasonable doubt must be grounded upon irreconcilable evidence, is incorrect, because the evidence may be insufficient to prove the charge.

ERROR — *which does not prejudice.* But if the case is entirely free from doubt, the error in the charge is not ground for reversal.

It must, however, appear that the prisoner was not and could not have been prejudiced by the error in the instruction.

VERDICT — *in case of manslaughter.* A verdict which finds the prisoner guilty of involuntary manslaughter, sufficiently determines the issue.

| 2 | 13 |
| 3 | 327 |
| 9 | 125 |
| 2 | 13 |
| 13 | 525 |
| 2 | 13 |
| 20 | 67 |
| 2 | 13 |
| 25 | 276 |

*Error to District Court, Arapahoe County.*

AT the November term, A. D. 1870, Richard Mackey was indicted for the murder of Charles Laughrey, in the Gilpin county district court. The facts respecting the summoning of the grand jury are sufficiently stated in the opinion. The cause was removed to Arapahoe county by change of venue, where a trial was had and the jury found the prisoner guilty of involuntary manslaughter. At the trial it appeared that the homicide occurred in a saloon kept by one McLaughlin, in the town of Nevada, on the 13th November, 1870 ; that the prisoner was drunk and that he came into the saloon two or three times shortly before the shooting and threatened violence to some that were present, and brandished his pistol in a threatening manner. The deceased was sitting by the side of a table, and the prisoner having flourished his pistol above his head was in the act of bringing it down, when it was discharged either purposely or by coming in contact with the table, the ball taking effect upon deceased and causing his death. Several witnesses for the people including the physician who examined the wound testified that the ball entered the body of deceased six or eight inches above the line of contact with the table and ranged downward and toward the left ; these witnesses were of the opinion that the pistol was discharged by the prisoner before it came in contact with the table ; other witnesses for the defendant thought that the pistol struck the table before it was discharged ; the prisoner proved that he was on good terms with deceased and had no quarrel with him.

The part of the charge respecting reasonable doubt upon which error was assigned, was as follows :

" The court instructs the jury that if they have a reasonable, well-founded doubt of the guilt of the defendant, that doubt should operate in favor of the defendant ; such doubt, if any there be, must be a reasonable, well-founded doubt, grounded upon the irreconcilability of the evidence, not such a doubt as comes from the imagination."

The charge was quite voluminous, and the phrase "reasonable doubt," was often used. In another part the language of the charge was as follows :

"The court instructs the jury that reasonable doubt is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition, that they cannot say that they feel an abiding conviction to moral certainty of the truth of the charge. The proof is on the prosecution. All presumptions of the law, independent of evidence, are in favor of innocence, and every person is presumed to be innocent until he is proven guilty, and if upon such proof there is reasonable doubt remaining, the accused is entitled to an acquittal, for it is not sufficient to establish a probability."

The charge respecting malice, to which objection was also made, was not discussed in the opinion, and therefore it is not inserted here.

Mr. Justice WELLS did not sit at the hearing.

Mr. H. P. H. BROMWELL and Mr. H. M. TELLER, for plaintiff in error.

Mr. M. A. ROGERS, District Attorney, for defendant in error.

HALLETT, C. J.   The indictment was found at the November term, 1870, of the Gilpin district court, by a grand jury summoned by the sheriff under a special venire, issued after the regular panel of grand jurors for that term had been discharged.   A challenge to the array was interposed by the prisoner before the jury was sworn, by which the power of the court to proceed in that manner was denied, and this presents the first question for consideration.   It is claimed that the statute regulating the manner of selecting jurors (R. S. 387) points out the only method by which jurors can be lawfully selected, and that, after the regular panel of jurors had been discharged for the term, no jury could be selected until the next term of court.   That statute provides

that the county commissioners shall select jurors, prior to each term of court, to serve at such term, and that the jurors, so selected, shall be summoned upon a venire issued for that purpose to the sheriff of the county.

By the 10th section of the act, if the county commissioners shall fail to select jurors to attend at any term of court, or if any officer charged with any duty respecting the selecting or summoning of jurors shall fail to perform the same, and thereby it shall happen that jurors shall not be summoned, or if jurors, when selected and summoned, shall fail to appear, the court may issue a special *venire* to the sheriff of the county to constitute a jury; and by the last clause of the section, if jurors summoned to attend at any term of court shall, for any cause, be discharged, talesmen may be summoned to supply their places. The argument of counsel, that the selection of jurors by the board of commissioners was designed to exclude the common-law mode of selection in all cases, is not borne out by the statute. We cannot presume that the legislature did not intend that a second panel should be summoned at any term of court, when a necessity for it should arise during the term, for there is nothing in the statute evincing such intention. Indeed, the anxiety of the legislative assembly not to impede or delay the course of justice is expressed in the 10th section, which affirms the common-law power of the court to convene a jury when none shall be selected in the manner prescribed by the statute.

The exigency which requires a second grand jury to be convened at a term of court is often quite as urgent as that upon which the first was obtained, and it was as fully recognized by the common law. The circumstance that provision has been made for selecting the first panel of jurors in a manner different from that adopted by the common law is not significant as to the second panel, which may or may not be required, and with which it is in no way connected. The authority to summon the second panel, which is given by the common law, may stand unimpaired by the regulation as to the first panel. *Stone* v. *The People*, 2 Scam. 326.

As to the number of grand jurors, the statute provides that it shall not be less than sixteen, nor more than twenty-three. While the order of the court required that twenty-three persons should be summoned, but twenty-one were returned and impaneled. This was a sufficient number under the statute, and more than was required at the common law.

It may be conceded that the *venire facias* enters into the record without bill of exceptions, or other method of authentication, but the fact that it is not embodied in the transcript filed in this court proves nothing.

It has not been the practice with us to send up the *venire* for either jury, and in cases where no question is raised as to the regularity of the process, there appears to be no good reason for requiring it to be done. In the South Carolina case cited by counsel, the *venire* was without a seal, and the original writ was sent up to enable the court of appeals to determine the fact. *State* v. *William*, 1 Richardson, 188. It is not said that the absence of the writ will constitute error in the record, and I know of no case which goes so far. It seems that the writ may be put into the transcript, if there is any reason for doing so, and this is all that is necessary to protect the rights of the accused.

If the writ is irregular, objection can be made in the court below, and the ruling of the court can be reviewed in this court. In the absence of the writ the proceedings must be supported according to the rule that error must be shown to exist, and will not be presumed.

The definition of malice, in the charge of the court, to which objection is made in the 9th and 11th assignments of error, has become immaterial by reason of the finding of the jury that there was no malice in the killing. The distinction between murder and manslaughter, and the fact that malice is a necessary ingredient in the first, was pointed out to the jury, upon which they found the prisoner guilty of manslaughter only ; thus rejecting the idea of malice. The suggestion that the charge may have influenced the jury, in regard to the verdict returned, although it refers to

a higher crime, rests upon conjecture, merely, and cannot be entertained. We must assume that the jury performed their duty intelligently, and with a correct understanding of the charge of the court. In that view no question can be raised as to the charge in relation to the crime of murder, inasmuch as the prisoner has been acquitted of that crime. *State* v. *Dickson*, 6 Kansas, 220.

The charge in regard to reasonable doubt, given on behalf of the people, is open to the objection that it calls for a doubt, founded upon irreconcilable evidence, and this is not the only source of doubt which is recognized by the law. Although harmonious, the evidence may be insufficient to generate belief, and the doubt, arising upon such evidence, will avail the prisoner as well as that which arises from conflicting testimony.

The error was not cured by the instruction on the same point, given on behalf of the prisoner, for we cannot know by which the jury was guided. *People* v. *Campbell*, 30 Cal. 312.

But we think that the jury could not have been misled by the instruction, inasmuch as the facts are clearly established, and admit of no rational doubt as to the guilt of the accused. On the night of November 13, 1870, the prisoner was at a drinking-saloon in Nevada, armed with a pistol, and very drunk and quarrelsome. He drew the pistol once, at least, before it was discharged, and flourished it around in a threatening manner, accompanying the act with threats against the keeper of the saloon and others. Deceased was sitting at a table when the pistol was again drawn and discharged by the prisoner, either purposely or by casting it upon the table. According to the testimony of some of the witnesses the pistol was discharged in the hands of the prisoner, and these were supported by the testimony as to the direction taken by the bullet through the body of deceased. But if we accept the testimony most favorable to the prisoner, the pistol was discharged by bringing it down violently upon the table, and this, in any view that may be taken of it, was criminal carelessness, which the

law will not excuse. If the prisoner had no intention whatever to injure any one, the natural and probable consequence of handling a loaded pistol in the manner described was to discharge it, and this, in a room occupied by a number of persons, was, of course, dangerous to human life. Aside from the intention of the prisoner, his act was highly unlawful, and certainly it was not less criminal than the jury found it to be. (1 Bish. Crim. Law, 4th ed., § 390.) It is conceded that it rests upon the people to show that the prisoner was not and could not have been prejudiced by the error in the instruction. *Greene* v. *White*, 37 N. Y. 407.

When this is made to appear, the law is well settled in criminal as well as in civil cases, that an error in the charge is not ground for a new trial. *Brooster* v. *The State*, 15 Ind. 190; *The State* v. *Cooster*, 10 Iowa, 153; *The People* v. *Scott*, 6 Mich. 287; *Stewart* v. *The State*, 1 Ohio St. 66; *State* v. *Frank*, 5 Jones (N. C.), 384, *Shorter* v. *The People*, 2 N. Y. 193; *Josephine* v. *The State*, 39 Miss. 648; *The People* v. *Honshell*, 10 Cal. 83. So, also, in the analogous case of the admission of illegal evidence, if it clearly appears that the result would have been the same if the objectionable evidence had been excluded, the rule is the same. *The People* v. *Gonzalez*, 35 N. Y. 59; *Osburne* v. *The State*, 7 Ohio, 212; *The State* v. *Staley*, 14 Minn. 110; *The State* v. *Ford*, 3 Strobh. 517; *The State* v. *Lawson*, 14 Ark. 114. Upon the undisputed facts established by the evidence, the prisoner is guilty of the crime of which he has been convicted, and, as there was no room for doubt, the jury must have arrived at the same result under a proper charge.

In defining manslaughter to the jury, the court used the language of the statute, which, following the common law, refers to voluntary and involuntary homicide. By the 24th section of the act, involuntary manslaughter is defined to be the killing of a human being without any intent to do so in the commission of an unlawful act, or a lawful act which probably might produce such a consequence in an unlawful manner; but where such involuntary killing shall happen

in the commission of an unlawful act, which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, then the offense shall be deemed and adjudged to be murder. Under this instruction, the jury returned a verdict of guilty of involuntary manslaughter, and it is urged that the verdict is insensible.

But we think that there can be no question as to the effect of the finding, and that there is no ambiguity whatever in the verdict. The general term "manslaughter" comprehends voluntary and involuntary homicide as defined in the statute; and although a general verdict of guilty of manslaughter would have been sufficient, it is no objection that the jury have specified one of the subdivisions which is recognized in the statute.

The discussion will not be extended to other points presented in the assignment of errors, but not noticed in argument. The judgment of the district court is affirmed, with costs, and the sheriff of Arapahoe county will take the body of the said Richard Mackey, and him, with all convenient speed, convey to the penitentiary of Colorado, there to be confined in conformity with the judgment of the said district court.

*Affirmed.*