[Crim. No. 515.   Third Appellate District.—April 15, 1921.]

## THE PEOPLE, Respondent, v. CHARLES LESSE, Appellant.

[1] CRIMINAL LAW—SYNDICALISM—SUFFICIENCY OF INFORMATION.—An information charging the crime of criminal syndicalism which follows the wording of the statute is sufficient.

[2] ID.—PLACE OF TRIAL—BIAS AND PREJUDICE AGAINST CODEFENDANT —PROPER DENIAL OF MOTION.—A motion for a change of place of trial of a prosecution for criminal syndicalism on the ground of bias and prejudice is properly denied where it appears from the affidavit in support of the motion that the alleged bias and prejudice was against a defendant jointly charged with the moving defendant.

[3] ID.—TRIAL—READING OF BOOK TO JURY—EXPOSITION OF DOCTRINES OF I. W. W.—LACK OF ERROR.—In a prosecution for criminal syndicalism, it was not error to permit the district attorney to read to the jury certain portions of a book relating to and expounding the doctrines of an organization commonly called Industrial Workers of the World, since the jury was informed of nothing that they could not read as a part of current history.

[4] ID.—JURY—UNFAVORABLE OPINIONS OF JURORS OF I. W. W.— READING OF PUBLIC JOURNALS.—In such a prosecution there was no error in accepting jurors who entertained unfavorable opinions of the I. W. W., where their opinions were formed from reading public journals.

[5] ID.—REFUSAL OF RE-EXAMINATION OF JUROR—ABSENCE OF ERROR.
In such a prosecution, it was not error to refuse the defendant
permission to further examine a juror as to his opinion of the
I. W. W., after having questioned the juror on the subject and
the court having passed on the challenge.

APPEAL from a judgment of the Superior Court of
Humboldt County. Denver Sevier, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. G. Lawlor for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Dep-
uty Attorney-General, for Respondent.

PREWETT, P. J., *pro tem.*—The appellant was convicted
of the crime of criminal syndicalism, as defined in the act
of April 30, 1919 (Stats. 1919, p. 281). The information
against him charges a violation of each of the five sections
of the act.

1. He urges the point on demurrer that the information
fails to state the details of the offense with sufficient par-
ticularity.

[1] The information follows the statute and this has
been held to be sufficient. Every question raised on de-
murrer has been raised in each of the several cases based
upon this statute that have reached the appellate courts of
this state, and in each case the points have been decided ad-
versely to the contentions of appellant. This renders un-
necessary any extended examination of his claims. We need
only to direct attention to the cases of *People* v. *Taylor,* 34
Cal. App. Dec. 414, [see, also, 187 Cal. 361, 203 Pac. 78],
*People* v. *Steelik,* 33 Cal. App. Dec. 594, [see, also, 187 Cal.
378, 203 Pac. 85], and *People* v. *Malley,* 49 Cal. App. 597,
[194 Pac. 48], where these points are fully discussed.

[2] 2. The appellant moved for a change of venue.
The motion was properly denied. No sufficient notice of
intention to make the motion was given to the district at-
torney as required by law. There was an abortive attempt
to give a notice of a similar motion in the case of *People*
v. *Golden,* another defendant informed against in the
same information. The district attorney, without waiv-

ing his claim that the notice was insufficient, stipulated that the papers used on the motion in the Golden case might apply to this case. The showing was wholly insufficient to justify the motion. There was no affidavit, and no pretense of one, showing that there existed any bias or prejudice against this appellant or showing that he could not get a fair and impartial trial in the county of Humboldt. The affidavit actually used refers only to the defendant Golden. There exists no presumption that a bias or prejudice shown to exist against one of two or more persons jointly charged exists against any of the others.

But even if the affidavits on behalf of Golden could be held to apply to appellant, still the showing was insufficient. Counter-affidavits were filed. These affidavits refer to the appellant and they show that there existed at the time no bias or prejudice against him. At most, the evidence on the point was conflicting, and the trial court was vested with authority to determine the conflict. We approve the conclusions of the trial court, but if it were otherwise, we would be bound thereby under a well-established rule.

[3] 3. The appellant insists that the court erred in permitting the district attorney to read to the jury certain portions of a book entitled "The New Unionism." This book relates to and expounds the doctrines of a syndicalistic organization commonly called the "I. W. W." Appellant admits that he was, at the time charged in the information, a member of this organization. The book purports on its face to be a publication made under authority of that organization. A reference to the book as *I. W. W. literature* was found among the papers in the possession of the appellant at the time of his arrest. It will be seen that the appellant (page 233 of reporter's transcript) admits that it is listed as an I. W. W. book by authority of that organization. On page 240 he admits that it is circulated by the same authority. There was no error in its admission.

But in truth its disclosures as to the purposes of the I. W. W. are a part of the current history of the day—a part of the history of the times. We are informed by the magazines, encyclopedias, and dictionaries of the day that the organization advocates criminal syndicalism, revolutionary violence, and sabotage. The book really informed the jury of nothing that they cannot read as a part of

current history. The supplement to the International Encyclopedia issued in the year 1916, at page 330, speaking of the I. W. W., says: "It favors direct action, including sabotage and the direct strike, favors industrial unionism in opposition to trade unionism, opposes resort to customary political methods, preaches industrial revolution and the immediate confiscation of capital goods."

Merriam's Webster's New International Dictionary—the very recent edition—shows under the word "Syndicalism" in the addenda, that it: "Aims to abolish the present political and social system . . . by means of the general strike, and direct action, which is any kind of action that is directly effective, whether it be a simple strike, a peaceful public demonstration, sabotage or revolutionary violence."

The New International Encyclopedia is one of the most recent reference works and general histories on the market. Under the title, "Industrial Workers of the World," in expounding the principles of the organization, it states: "It is the duty of the workers to injure the employer wherever possible. In accordance with its underlying philosophy, the tactics of the I. W. W. is that of guerrilla warfare. . . . Such methods of injuring the employer are known as sabotage. Sabotage may consist in throwing the progress of production out of order, through tampering with machinery, improper use of materials or loitering at work."

[4] 4. Several jurors stated on their *voir dire* that they entertained unfavorable opinions of the I. W. W., and one juror, in answer to a question as to the quantity of evidence that would be required to remove his unfavorable opinion, answered that it would take "enough." The appellant complains that these jurors, thus unfavorably inclined to this organization of which he is a member, could not give him a fair and impartial trial. We are not inclined to coincide in this view. These jurors answered that they were wholly unacquainted with the appellant; that they knew nothing whatever about him, that they entertained no bias or prejudice against him, and that they knew none of the facts of his case. Furthermore, each of them stated that their opinions were formed from reading public journals and that they could, and if sworn as jurors would, notwithstanding such opinions, act fairly and impartially upon the matters to be submitted to them. This showing, under the express

terms of section 1076 of the Penal Code, justified the court in accepting them as jurors.

Moreover, these opinions were not adverse to the lawful rights of the appellant. He was, of course, entitled to a jury that would try him fairly and impartially upon the facts of his case, but he was not entitled to a jury who would excuse or condone unlawful acts of violence by him because, forsooth, he might make the pretense of believing or might in fact believe that they were right. Subdivision 4 of section 2 of the act under which he is prosecuted reads as follows: "4. Any person who . . . becomes a member of any organization . . . organized or assembled to advocate, teach or aid and abet criminal syndicalism" is guilty of a felony.

Criminal syndicalism means, among other things, direct action and sabotage.

This last word implies willful, malicious, and systematic injury to and destruction of property for the purpose of thereby injuring the employer.

All jurors who read must know in a general way all about the I. W. W. Those who cannot read are not competent jurors, anyway.

It is not too much to say that it is to-day impossible to select a thoughtful reading man or woman as a juror who does not know the general purposes of the organization. The situation is quite unlike that of a juror who has formed adverse opinions concerning a mere conspiracy or other cabal local to a given case. In such case both the existence of the conspiracy and its unlawful purposes are facts of the particular case. Here we have to deal with an organization whose existence and purposes are matters of history. We do not excuse jurors because they do not believe in arson, rapine, and sabotage. The fact that these jurors are not favorably inclined to the I. W. W. neither legally nor morally disqualifies them where it fully appears, as it does here, that they can and will give the accused a fair and impartial trial.

5. Objection is made to certain remarks by the district attorney during his argument to the jury. These remarks were not unfair and were quite within the limits of permissible comment. His arguments were legitimate deductions from the facts proved. We find no error therein.

[5] 6. One further point remains to be noticed. One L. D. Graeter was called as a juror. After several questions concerning his opinions of the I. W. W. he was challenged for entertaining an unfavorable opinion of that organization. Like the other jurors, he testified that his opinions were founded upon what he had read in the public journals. He further stated that he could, and if sworn as a juror would, notwithstanding such opinions, act fairly and impartially upon the matters to be submitted to him. The challenge was overruled. Thus far his case is not unlike that of the other jurors.

However, after the court had passed upon his challenge the appellant sought to reopen the same matter for the purpose of supporting his claim that the juror was biased against the I. W. W. He sought (appellant's brief, page 20) to show "whether or not his opinion was based upon other grounds." The court held that, having once questioned the juror as to his opinion of the I. W. W. and made his challenge and invited a ruling thereon, he was precluded from reopening the same matter in order to show the same identical opinion. In this, the court was right.

The court was evidently willing to permit further examination as to other and distinct matters, for it wound up the colloquy on the subject with these words: "You lay your foundation for the challenge and then make it."

In *People* v. *Stonecifer*, 6 Cal. 405, the court says: "The first error assigned by the appellant is the refusal of the court below to allow him to re-examine the juror Knox, after he had been called and examined, first by the prisoner and afterward by the state. The appellant contends that by this ruling, he was forced to a peremptory challenge, when, if he had been allowed to examine him further, he might have been excluded for cause. . . . "

The court sustained the action of the trial court. A similar ruling was sustained in *People* v. *Collins*, 105 Cal. 512, [39 Pac. 16].)

But as to all these jurors, the court had not been advised by any evidence, statement, or suggestion during the trial and up to that time that the appellant was a member of the I. W. W.; hence there would have been no error in excluding questions touching that organization.

The information did not charge appellant with being an I. W. W. There was no reference in the affidavits for a change of venue from which it could be inferred that he was such, even if such reference would have been sufficient to advise the court that this fact would be any part of either the prosecution or defense.

Moreover, the historical matter which we have quoted from standard works should be considered with reference to these questions to the jurors and their privilege of opinion as good citizens concerning the unlawful purposes and activities of the I. W. W. We have carefully examined the evidence and the whole case and we are satisfied that no alleged error has resulted in any miscarriage of justice.

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.