# Hickey v. The State.

### Indictment for Nuisance.

1. *Nuisance; indictment for; what must show*—An indictment for a nuisance must show that the matter complained of, in its nature or its consequences, produces injury or damage to all who are, or may come, within its locality; and it must state the particular facts from which the injurious quality arises.

2. *Same.*—A house that is a common resort for the commission of criminal offenses, is indictable as a public nuisance; but an indictment for keeping such a house must show what was done in it to give it the offensive character.

3. *Same.*—An indictment charging that defendant kept or maintained a public nuisance, by opening a store house on the public highway, and that for lucre and profit he permitted evil and dishonest persons to come and gather together in the night time, and then and there engage in illicit trade with him, in a manner offensive to good morals and the honest sentiments of the community, and greatly to the damage of the said people by the sale to him of cotton and corn, which he had good reason to believe had been stolen, &c., is defective; it fails to allege the commission of any act, or the omission of any duty, which would impress the place with the character of a nuisance.

APPEAL from Circuit Court of Barbour.

Tried before Hon. H. D. CLAYTON.

The appellant was indicted for maintaining a public nuisance, &c. He demurred to the indictment, but the court overruled the demurrer; and a trial being then had, he was convicted. The indictment is set forth in the opinion.

JAMES L. PUGH, for appellant.—The indictment is entirely too vague and indefinite to support a conviction. 18 Ala. 535; 37 Ala. 123; 29 Ala. 28. Being a merchant and trader, appellant had a right to keep open store at night, and to buy corn and cotton, "having good reason to believe it was stolen." According to the indictment, he was the only one "having good reason to believe" the property was stolen; for no intendments can be made in its favor. How could this be a *nuisance* to people traveling the highway? If the acts were lawful, the *manner* of selling could not make a nuisance. There is no averment that Hickey kept open store with any evil intent, nor that the assemblages there were so

[Hickey *v.* The State.]

frequent and habitual as to become a nuisance. 8 Cowen, 146; Wood on Nuisances, 28–30.

JOHN W. A. SANFORD, Att'y Gen., *contra.*—The common law obtains in this State; and anything which causes detriment, annoyance, or hurt to the community, or is offensive to public morality and decency, will render the offender liable to indictment. *State* v. *Debury,* 5 Iredell, 371. The mere occupancy or keeping of many places will render the occupant or tenant liable to indictment for a nuisance; for instance, a cockpit, stage for rope-dancers, bawdy-house, &c. *Hunter* v. *Commonwealth,* 2 Serg. & Rawle, 298; 5 Hill, 121; 3 Metc. 130; 3 Denio, 101. If this be so, how much more guilty of a criminal offense is he who keeps a house where wicked persons and thieves assemble for the purpose of carrying on unlawful traffic in stolen property, by which all persons are injured, and public morality and decency outraged? The indictment was sufficient. 1 Bish. Crim. Procedure, §§ 267–8.

BRICKELL, C. J.—We have no statute defining the offense of nuisance in any of its various forms, nor declaring the constituents, or prescribing the form of an indictment for it. The offense, therefore, remains as defined at common law; and an indictment for its commission may be framed as at common law, or, at the election of the pleader, according to the general statutory provisions, dispensing with many averments material in an indictment at common law. R. C. § 4120. Whether the one or other form of pleading is pursued, the facts constituting the offense must be stated in ordinary and concise language, so that the accused may be informed what is intended, and the court, on conviction, may know what judgment to render. R. C. § 4112. The words of the indictment are to be construed in their usual acceptation; except legal words and phrases, which must be construed according to their legal meaning. R. C. § 4128.

The only question presented is the sufficiency of the indictment—does it state an indictable offense? The facts stated are, that the defendant, "being a merchant or trader, did keep or maintain a public nuisance, by the opening of a certain store house on the public highway, and in said store, for his own lucre and profit, certain evil and dishonest persons, whose names are to the grand jury unknown, were allowed by the said J. C. Hickey to come and gather together in the night time, and then and there to engage in illicit trade with the said J. C. Hickey, in a manner offensive to

[Hickey *v.* The State.]

the good morals and honest sentiments of the people of said county and neighborhood, and greatly to the damage of the said people, by the sale to the said J. C. Hickey of cotton and corn, which said cotton and corn, the said J. C. Hickey then and there had good reasons to believe had been stolen by the said parties," &c.

It is not the violation of private right, or an injury to one, or a few individuals, however grievous, that can be redressed by indictment. Public nuisances only are indictable; an act done, or an omission of duty which ought to have been performed, which, in its nature or its consequences, produces injury or damage to all who are, or who may come, within the locality in which the act is done or omitted. 1 Bish. Cr. L. § 352. The character of publicity exists, if it is an annoyance, or hurtful to the particular locality—those who come, or are liable to come, in contact with it, or within its influence. *Hackney* v. *State*, 8 Ind. 494. The indictment must, by its averments, disclose that the matter complained of has this injurious quality, and it must state the particular facts, from which it arises. There are public nuisances, *mala in se*, to which the law imputes the quality, because of their evil influence on the public safety, or public peace, or public morality. Lewdness in public places, a gaming house, to which people resort, a bawdy house, and a disorderly house, are of this character. Though to places of this character the law imputes the public injury, the essential ingredient of an indictable nuisance, it is not sufficient to aver generally that the defendant was guilty of open, public lewdness; nor that he kept a gaming house, to which people resort, a bawdy house, or a disorderly house. The further allegation of what was done in the house, which gives to it the offensive character, and from which the public injury is deduced, is necessary. 2 Bish. Cr. Pr. §§ 275–6; Wood on Nuisances, 884; 3 Green. Ev. § 185.

A disorderly house is defined, in general terms, as a house or other place to which people resort, to the disturbance of persons lawfully in the place, or the disturbance of the neighborhood. 1 Bish. Cr. L. § 1046. There are other definitions, broader, and more descriptive of the places or houses denounced in the criminal law as disorderly. That given by Wood on the "Law of Nuisance," taken from the case of *State* v. *Williams*, 30 N. J. 102, will, perhaps, embrace the character of houses recognized by judicial decisions as falling within the term disorderly: "A disorderly house is any place of public resort, in which unlawful practices are habitually carried on, or which becomes a rendezvous or place of

[Hickey *v.* The State.]

resort for thieves, drunkards, prostitutes, or other idle, vicious and disorderly persons, who gather there to gratify their depraved appetites, or for any purpose; for such persons are regarded as dangerous to the peace and welfare of the community, and their presence at any place, in considerable numbers, is always a just cause of alarm and apprehension." Wood on Nuisances, § 38. The general terms of this definition may need qualification; but we think it can be stated as a clear legal proposition, that if a house is a common resort for the commission of criminal offenses, it is indictable as a public nuisance. 1 Bish. Cr. L. § 1055. It has the most material vitiating characteristics of a disorderly house. Riot or disorder, disturbing the quiet of the locality, is not an essential, though often one of the criminating qualities of a disorderly house, or a house indictable as a public nuisance. 3 Whart. Cr. L. § 2384; Wood on Nuisances, § 39. If the practices there permitted, and habitually indulged, endanger the safety, or are offensive and corrupting to the public morals of the locality, and are violations of the criminal law, it becomes indictable. It is not indispensable to the criminal character of such a house, that it should be situate in a public place; nor is it material that the guilty occupants, or those frequenting or resorting to it, invest their movements and conduct with secrecy or privacy. That such a house is a resort, and criminal practices are there pursued, offending the moral sense, and endangering the security of person or property, fixes its character as a public nuisance. It may not be strictly a disorderly house; the quiet of the locality may be unbroken; the common injury flows from the evil influence it exerts—from the temptations and opportunities for the commission of crime it affords.

A defect, patent on the face of this indictment, is, that it does not disclose that any criminal act was done in the house, or that anything was there done, offensive to the peace, or the safety, or the morals of the public. The general averment, that the defendant kept or maintained a public nuisance, by opening a store house on the public highway, and that for lucre and profit he permitted evil and dishonest persons there to come, and engage with him in illicit trade, is qualified by the subsequent averment, that the illicit trade consisted of the sale to the defendant of cotton and corn he had good reason to believe such persons had stolen. The averments, that the defendant kept and maintained a public nuisance, and that the trade in which he engaged was illicit, are mere generalities—conclusions of fact and law,

[Hickey *v.* The State.]

not imparting any strength to the indictment. Though the assemblage of these persons and the trade was in the night time, however important as evidence, does not aid the indictment. Nor is the character of these persons material. The indictment is not for keeping a house which was intended and kept and maintained as a resort for evil disposed persons of ill fame. The *gravamen* of the offense intended to be charged is the keeping and maintaining a house in which criminal practices were pursued habitually, and the criminal practices consist of the illicit trade; and that is averred to have been the sale to the defendant of corn and cotton which *he had good reason to believe had been stolen.* This averment may be strictly and literally true, and no criminal act, or other act, in legal contemplation, offensive to public morality, or violative of the public peace, or dangerous to the public safety, have occurred. The averment is, at best, but of mere matter of evidence—of a single fact, having a tendency, on a proper prosecution, to prove the defendant has knowledge, an indispensable element of guilt in the trade the indictment avers was illicit. The fact of such knowledge is not averred—only a fact from which the jury could infer it. Pleadings, in civil or criminal cases, should never aver mere evidence, but facts. The receiving or purchasing goods which the purchaser or receiver may have good reason to believe have been stolen, is not a criminal offense. The goods must in fact have been stolen; and then, that he had good reason to believe them stolen, is a fact from which the jury may, or may not, infer the guilty knowledge, essential to constitute the statutory offense of receiving stolen goods, or to involve him in the common law offense of an accessory to larceny. But, if the goods were not in fact stolen, though tortiously acquired, or the real property of those from whom they were received, there is no violation of the criminal law, whatever reason there was to believe them stolen, or however evil disposed, or of whatever ill fame, the persons from whom they were received.

If the indictment had averred that the defendant kept and maintained a store house, for the purpose of buying, or bartering for, or receiving stolen goods, and had there bought, bartered for, or received goods which in fact had been stolen, with knowledge of the thefts; and had averred facts showing the continuity of such illicit trade or unlawful practice, it would have been sufficient. Continuity is an element of the offense, and must be shown by the indictment. A single instance, or a single act, would not render him guilty of keeping a house indictable as a public nuisance. *Dunnaway*

[Gholson v. The State.]

v. *State*, 9 Yerger, 150; Wood on Nuisances, § 42. It is not necessary that the indictment should aver from whom the goods were stolen, nor from whom they were received. It must distinctly aver the facts which show that the defendant, in the house kept and maintained, was carrying on the business of receiving stolen goods, with knowledge they had been stolen. These facts are not shown in the present indictment, and the demurrer ought to have been sustained.

The judgment is reversed, and the cause remanded. The prisoner will remain in custody until discharged by due course of law.