Cheek v. The Commonwealth.

---

CASE 73—INDICTMENT—MARH 29, 1881.

# Cheek v. The Commonwealth.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. A person who sells in a house under his control pools upon horse-racing is punishable under an indictment for keeping a "disorderly house."

2. See opinion for definition of "gaming," and for the term "disorderly house."

Cheek v. The Commonwealth.

HUSTON & WEBSTER FOR APPELLANT.

1. If the appellant is punishable at all, it is under section 10, chapter 47, General Statutes. (West v. Commonwealth, 3 J. J. Mar., 641; sec. 3, chap. 29, Gen. Stat.; 15 Pick., 231; 6 Serg. & Rawle, 5; 3 Ib., 273; 1 Rawle; 289; 5 Ib., 64.)

2. The instruction given is error. (Smith v. Commonwealth, 6 B. Mon., 22.)

P. W. HARDIN, ATTORNEY GENERAL, AND C. J. BRONSTON, COMMONWEALTH'S ATTORNEY, FOR APPELLEE.

1. Pool-selling is no more nor less than permitting or inducing a bet on a horse-race. The pool-seller is simply a stake-holder.

2. Although not indictable under the statute for suffering gaming in his house, appellant is punishable for keeping a disorderly house at common law. (6 B. Mon., 23; Gen. Stat., chap. 47, sec. 11; Brown v. Watson, 6 B. Mon., 588.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

Appellant was indicted for the offense of "keeping a disorderly house," the specification being that he, for gain, habitually sold pools upon horse-races, and habitually procured idle and evil-disposed persons to come to his house to buy pools, and to bet upon horse-races, to the common nuisance and annoyance of all good citizens. The evidence established that appellant sold pools upon races to be run in Kentucky and elsewhere, for which he received a commission in no way dependent upon the result of the race, and that there was no disorder or disturbance of any kind.

The court instructed the jury as follows:

"If the jury believe from the evidence, beyond a reasonable doubt, that defendant, in this county, and within twelve months before the finding of the indictment herein, did suffer and permit divers persons to habitually assemble in a house in the city of Lexington, and on Main street thereof, commonly called the 'Merchants,' in the occupation and under the control of defendant, and there engage in betting, winning, and losing money upon horse-races,

Cheek v. The Commonwealth.

·they should find the defendant guilty, and fix his punishment at fine or imprisonment, either or both, in their discretion; otherwise, they should find the defendant not guilty."

The jury having found appellant guilty, and fixed his fine at two hundred dollars, judgment was entered accordingly, from which this appeal is taken.

The sole inquiry is, whether the simple act of selling pools in a house under the control of the person selling is punishable under an indictment for "keeping a disorderly house." A determination of that question involves the inquiry, first, is the act complained of punishable by statute? second, is it an offense at common law?

The statute denounces a penalty against one for betting at "any game or wager," for inviting or inducing another to visit a place where "gaming" is carried on, and for setting up or keeping any "faro-bank, gaming table, machine or contrivance used in betting or other game of chance."

Appellant could not be convicted under an indictment for the statutory offense of betting at a "game or wager," first, because he did not bet or wager anything; and second, because betting on a horse-race, although punishable under the statute against wagering, is not "gaming," and is not, therefore, within the statute against inducing another to visit a place where "gaming" is carried on. The method pursued by appellant in the sale of pools is not a "machine or contrivance used in betting." So there is no express statutory penalty against the specific act of selling pools.

A game is a contest of chance or of skill, where the party in whose favor the result appears wins or receives something ·by reason thereof which he would not otherwise have re-

ceived, and for which he paid no consideration. Appellant's commissions were not dependent upon the result of any race in which he sold pools, nor did any element of chance enter into his compensation or in any way affect it. His fees were the same without regard to the result of the race or of the disposition of the pools.

But while it is admitted that the selling of pools is not, in terms, prohibited by statute, it is insisted that because its tendencies are evil, in that it encourages persons to violate the law against betting, the act of selling pools, without regard to the manner in which it is done, is within the common law offense of "keeping a disorderly house." In this we concur.

A disorderly house, in its restricted sense, is a house in which people abide, or to which they resort, disturbing the repose of the neighborhood; but in its more enlarged sense it includes bawdy-houses, common gaming-houses, and places of like character, to which people promiscuously resort for purposes injurious to the public morals, or health, or convenience, or safety. Nor is it essential that there be any disorder or disturbance in the sense that it disturbs the public peace or the quiet of the neighborhood. It is enough that the acts there done are contrary to law and subversive of public morals, and the result is the same whether the unlawful acts are denounced by the common law or by statute. The legislature must be the judge of what is injurious to public morals, and it having declared that betting on horse-races is immoral, it is as much an offense to invite or induce persons to habitually attend in a house for the purpose of violating the statute as it would be if the acts there done were forbidden by the common law. (Bishop on

Criminal Law, vol. 1, secs. 1106, 1107, 1111, 1119, 1135,. and 1136; Smith v. Commonwealth, 6 B. M., 22; 12 B.. M., 3, Wilson v. Commonwealth.)

Judgment affirmed.