# CASES

IN THE

# SUPREME COURT OF ALABAMA.

NOVEMBER TERM, 1891-92.

## Price *v.* The State.

*Indictment for Keeping Disorderly House.*

1. *Keeping a disorderly house is a misdemeanor.*—Keeping a disorderly house was a public nuisance at common law, and is a misdemeanor, though not made so by statute.

2. *Same ; sufficiency of indictment.*—That the defendant was guilty of the offense of keeping a disorderly-house is sufficiently alleged by an indictment charging that he "did keep a disorderly, public and ill-governed house, and did, then and there, unlawfully cause and procure certain persons, as well women as men, of evil name and fame to frequent and come together, in his said house at many unlawful times, as well in the night as in the day, and did permit them there to be and remain drinking, tippling, carousing, cursing, swearing, indecently dancing, and misbehaving themselves, to the great damage, and common nuisance, and evil example of all the citizens, not only of the neighborhood, but of all the citizens of the county," &c.

3. *Same; constituents of offense.*—A conviction can be had for keeping a disorderly house, if the acts done therein or thereabouts by the persons resorting to the house from time to time, by the invitation or permission of the keeper of the house, are of such character as to be injurious to public morals, or convenience, or safety, or tend to annoy or disturb one or more persons in the neighborhood; though the disorderly practices do not disturb the public peace or the quiet of the whole neighborhood; though only one person in the neighborhood or community is disturbed or annoyed; though the indecency or disorderly conduct is not perceptible from the outside; though the keeper of the house does not know the reputation of the persons who resort to it; and though he attempts to prevent disorderly conduct or misbehavior.

4. *Former conviction of another separate and distinct offense no bar to prosecution.*—While the defendant, in keeping a disorderly house, may at the same time have violated the law against keeping open store on Sunday, yet the two offenses are separate and distinct, and a conviction of the latter offense can not be pleaded in bar of a prosecution for the former.

1-96

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The opinion sufficiently describes the indictment, and also the plea of former conviction, to which a demurrer was sustained. The trial was had upon issue joined on the plea of not guilty.

It was shown on the trial, as appears from the bill of exceptions, that the defendant kept what is known as a "barrel house," on Davis Avenue, a public street in the county of Mobile, but not within the limits of the city of Mobile. He had a license to carry on at that place the business of a retail dealer in vinous or spirituous liquors. The house was immediately next to the street, and had two rooms, with a door opening from one to the other. The front room was used as a bar-room, and was spoken of by the witnesses as "the barrel house." The rear room was used as a dance hall. There were music and dancing in this hall once or twice every week. Often, on such occasions, as many as thirty or forty persons, men and women, were there, drinking and dancing until late at night. When dancing was going on, both men and women would go back and forth between the barrel house and the dance hall, and sometimes persons of both sexes would get drunk while in the house. Drunken men and women were seen near the place. There was another saloon in the neighborhood. There was evidence that persons in the neighborhood heard men and women in the house shout, and curse, and use indecent language; and that men were seen lying drunk in a vacant lot adjoining the house. One witness who lived in the same neighborhood testified that he and his family were disturbed by the noises proceeding from the barrel house late at night. The evidence for the defendant tended to show that when he was present in the house he prevented disorderly conduct, and that he instructed his employes, who were in charge during his absence, not to allow any cursing or swearing, or any vulgarity or disorderly conduct.

The solicitor asked one of the witnesses for the State if the defendant, when at the house, ever sold any liquor to any of the persons there. The defendant objected to the question as irrelevant and immaterial. The court overruled the objection, and the defendant excepted. Another witness for the State was asked if he had seen a number of people near the barrel house drunk. The defendant objected to the question as irrelevant and immaterial. An exception was reserved to the overruling of this objection. The witness answered that he had. He was then asked by the

[Price v. The State.]

solicitor if he had seen a good many people go on the oppo-
site side of the street to prevent passing the house.   The
court sustained the defendant's objection to this question.
The solicitor then asked the witness if he had seen people
walk on the other side of the street.   The defendant ex-
cepted to the action of the court in overruling his objection
to this question on the ground that it was irrelevant and
immaterial.   The defendant also excepted to the action of
the court in permitting a witness for the State to testify that
the general reputation of people who visited the barrel
house was bad.

The court orally charged the jury, "that the gravamen of
the offense with which the defendant is charged is keeping
and maintaining a certain common, public, ill-governed and
disorderly house, and that the defendant unlawfully caused
and procured for his own lucre and gain certain persons of
evil name and fame, and of dishonest conversation, to fre-
quent and come together in his house, and to be and remain
in his house, drinking, tippling, and misbehaving them-
selves; *that it was not necessary that all persons in the neigh-
borhood, nor that a great many, should have seen or heard of it;*
the question is, was the house of such a character that any
citizen passing would have been annoyed by it, and was the
annoyance of such a character that it would worry any per-
son passing."   The defendant excepted to that portion of
this charge which is in italics.   The defendant also excepted
to the following portion of the charge given by the court of
its own motion:   "If the jury believe from the evidence that
the defendant kept the house, it is not necessary for them
to find that all of the things alleged in the indictment were
done, or occurred, if enough of the matters alleged occurred
to constitute a nuisance."

The defendant excepted to the refusal of the court to give
the following, among other written charges requested by
him :   1.  "The court charges the jury, that if they believe
all the evidence, the jury ought to find the defendant not
guilty."   2.  "If the jury believe from the evidence that it
has not been proven that defendant knew the reputation of
those who came to the barrel house in question, and that it
has not been proven that he knew or intended that they
should swear or disturb others when they got there or in
leaving there, defendant is not guilty, if the jury believe
from the evidence that defendant used reasonable care to
prevent such persons from doing wrong there."

[Price v. The State.]

GREGORY L. & H. T. SMITH, for appellant, cited *Hickey v. State*, 53 Ala, 518; *Powell v. State*, 89 Ala. 173.

WM. L. Martin, Attorney-General, for the State.

STONE, C. J.—The maintenance of a public nuisance is an offense condemned and punished by the common law; and although not declared by our statutes a misdemeanor, it is so regarded and acted upon in our jurisprudence. We must, therefore, look to the common law for the constituents of the crime. Among the many public nuisances, which were made indictable by the common law, is that of keeping a disorderly house. It is for this offense the appellee in the present case was indicted and convicted.

The second count of the indictment, which contains substantially the averments of the two counts, charges that "Thomas Price did keep a disorderly, public and ill-governed house, and did then and there unlawfully cause and procure certain persons, as well women as men, of evil name and fame to frequent and come together, in his said house at many unlawful times, as well in the night as in the day, and did permit them there to be and remain, drinking, tippling, carousing, swearing, indecently dancing, and misbehaving themselves, to the great damage, and common nuisance, and evil example of all the citizens, not only of the neighborhood, but all the citizens of the county," &c. The indictment sufficiently charges the offense of keeping a disorderly house.

The demurrer to the defendant's plea of former conviction was properly sustained. As shown by said plea, the offense for which the defendant was formerly prosecuted and convicted was for violating the Sunday laws. This offense is made punishable by statute, and is separate and distinct from the offense for which the defendant was indicted in this case. While in' keeping and maintaining a disorderly house the defendant may have violated the Sunday laws of this State on one or more occasions, this violation on one or more Sabbaths could not amount to the keeping of a disorderly house in such sort as to merge the two separate offenses in one. Nor could the conviction for the one be pleaded in defense of a prosecution for the other.

A disorderly house has been defined, in general terms, to be "a house or other place to which people resort, to the disturbance of the neighborhood."—1 Bish. Cr. Law, § 1046. In *Hickey v. State*, 53 Ala. 514, this court defines the elements necessary to constitute a house disorderly, in the

following language: "That such a house is a resort, and criminal practices are there pursued, offending the moral sense, and endangering the security of person or property, fixes its character as a public nuisance. It may not be strictly a disorderly house; the quiet of the locality may be unbroken; the common injury flows from the evil influence it exerts—from the temptations and opportunities for the commission of crime it affords." We conclude, therefore, that to sustain a conviction of the offense we are discussing, it is not essential that there should be any disorder or disturbance in the sense that it disturbs the public peace or the quiet of the whole neighborhood. It is enough that the acts done at such house are of the character charged, and contrary to law and subversive of public morals. The result is the same, whether the unlawful acts are denounced by the common law or by statute.—*Hickey v. State*, 53 Ala. 514; *Cheek v. Com.*, 79 Ky. 359; *Thatcher v. State*, 48 Ark. 60; *State v. Williams*, 30 N. J. Law, 104; 5 Amer. & Eng. Encyc. of Law, p. 693. Under the principles announced, the several portions of the testimony objected to by defendant were properly admitted. The defendant's objections to different parts of the testimony were also correctly overruled for the further reason, that such evidence tended to show defendant's knowledge of and connection with the disorderly house.

A conviction for keeping a disorderly house can be had on proof that only one person in the neighborhood or community was disturbed or annoyed, if the acts done therein or thereabouts were of such character as would tend to annoy all good citizens; and this, although there was no evidence of any indecency or disorderly conduct being perceptible from the exterior of the house.—*Com. v. Hopkins*, 133 Mass. 381; s. c., 48 Amer. Rep. 527; 5 Amer. & Eng. Encyc. Law, p. 694. There was no error in the two charges given by the court; nor in the refusal of the court to give the first two charges asked by defendant.

To sustain an indictment for keeping a disorderly house, it is not necessary that the defendant should know the reputation of the persons who came to his house, nor is it essential that he knew or intended that they should so misbehave as to annoy or disturb others. —Intention is no element of the offense. The indictment is sustained by proof of facts that show the defendant kept a public house; that by his invitation or permission persons came to said house from time to time, and while there indulged in practices that are injurious to public morals, or health, or convenience, or

[Lewis v. The State.]

safety; or do such things as will annoy and disturb one or more persons in the neighborhood or community. Nor is it a defense to such indictment, that the keeper of the house attempted to prevent any disorderly conduct or misbehavior. *Com. v. Cobb,* 120 Mass. 356. For these reasons, as well as others, the court properly refused to give the third charge requested by defendant. The refusal could also have been based on the ground that the charge was misleading.

We discover no error in the record, and the judgment is affirmed.