[No. 5331.]
[No. 2973 C. A.]

## Mossman v. The City of Fort Collins.

1.  **Disorderly House—Definition.**

    In the absence of a statutory definition of a disorderly house, it may be defined as a place of public resort, or a place frequented by the public, kept or maintained so as to disturb or annoy the public, the neighborhood, or passers-by; or a place where illegal or immoral practices are habitually carried on to the corruption of the public health, morals or safety; or a place resorted to by idle, dissolute, vicious or disorderly persons for the purpose of concocting depredations on society.— P. 274.

2.  **Intoxicating Liquors — Private Clubs — Disorderly Houses — Evidence.**

    Evidence that a private club furnishes intoxicating liquors for the use of its members is not sufficient to constitute keep-

ing a disorderly house, although the plaintiff city has an ordinance making it unlawful for any person either directly or indirectly to sell or give away intoxicating liquors.—P. 275.

*Appeal from the County Court of Larimer County.*
*Hon. J. Mack Mills, Judge.*

James O. Mossman was convicted of keeping a disorderly house, contrary to an ordinance of the city of Ft. Collins, and he appeals.   *Reversed.*

Mr. FRANK J. ANNIS and Mr. FRED W. STOW, for appellant.

Mr. CORNELIUS FERRIS, Jr., for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Appellant was convicted of keeping and maintaining a disorderly house, contrary to the provisions of an ordinance of appellee.

The trial was to a jury.

The city introduced in evidence an ordinance of the city of Fort Collins relating to disorderly houses, which made it unlawful for any person or persons to keep or maintain a disorderly house within the corporate limits of the city, and any person so keeping or maintaining a disorderly house should be deemed guilty of a misdemeanor, and, upon conviction thereof, punished as provided by the ordinance; and an ordinance relating to the sale of intoxicating liquors which made it unlawful "for any person or persons, either directly or indirectly, to sell or give away intoxicating malt, vinous, mixed, fermented or spirituous liquors within the corporate limits of the city of Fort Collins or within one mile of the outer boundaries thereof," and any person violating the above provisions of the ordinance, upon conviction thereof, should be punished as therein provided.

A witness on behalf of the city testified that on or about the 8th of April he was in the place of business of defendant, which was the club rooms of The Poudre Valley Club; that defendant was not there; that two gentlemen were present whom witness asked to have something with him; that witness helped himself by pouring from a bottle what was supposed to be liquor, and that the others did the same; that witness then left the room; that he had been to the club rooms before for the purpose of getting liquor; that he was a member of the club and knew that he could get liquor there; that the club was operated by The Poudre Valley Club and that defendant was manager thereof and paid by the club for his services; that the club rooms were for the exclusive use of members.

The city marshal testified that he knew the place of business of defendant, which was known as The Poudre Valley Club; that on the 24th of April he found defendant in charge of the place, and went through the rooms; that in the front room there was a card table, chairs and cigar case; in a closet off from this room two boxes of one-half pint bottles; in another room a Klondike table, and back of that another room in which were two refrigerators, two cases of bottles and a stand with glasses on; that he found a license issued by the internal revenue office to The Poudre Valley Club bearing date July 1, 1902; that the place of business, to which he testified as being defendant's place of business, was run by The Poudre Valley Club.

The foregoing is all of the evidence introduced by the city.

The defendant introduced no evidence, other than the articles of incorporation of The Poudre Valley Club.

Cities and towns are given authority to suppress

bawdy and disorderly houses, houses of ill fame or assignation, within the limits of the city or town.— Mills' Ann. Stats., § 4403, subd. 17.

We have no statutory definition of a disorderly house, and so far as we are advised no attempt has been made by the city of Fort Collins to define, by ordinance, a disorderly house.

Resort must therefore be had to the common law for a definition of such term.

"At common law a disorderly house, in its broadest sense, may be defined as a house that is kept in such a way as to disturb, annoy, and scandalize the public generally or the neighborhood, or the passers-by on a highway, or in such a way as to encourage or promote breaches of the peace, or to corrupt the morals of the community."—9 Am. & Eng. Enc. Law (2d ed.) 509.

"A disorderly house is a house in which people abide or to which they resort to the disturbance of the neighborhood, or for purposes which are injurious to the public morals, health, convenience or safety."—14 Cyc. 482.

"Any place of public resort  *  *  *  in which illegal practices are habitually carried on, or when it becomes the habitual resort of thieves, drunkards, prostitutes, or other idle, vicious and disorderly persons, who gather together there for the purpose of gratifying their own depraved appetites, or to make it a rendezvous where plans may be concocted for depredations upon society, and disturbing either its peace or its rights of property."—*State v. Williams,* 30 N. J. L. 102.

"The term 'disorderly house,' as defined by the common law, is one of very wide meaning, and includes any house or place, the inmates of which behaved so badly as to make it a nuisance."—*State v. Grosofski,* 89 Minn. 343.

The term disorderly house has been held to have the same meaning in a city ordinance.—*Hawkins v. Lutton*, 95 Wis. 493.

From which it appears, that certain elements combine to constitute a "disorderly house"; it must be a place of public resort, or a place frequented by the public, kept or maintained so as to disturb or annoy the public, the neighborhood, or passers-by; or a place where illegal or immoral practices are habitually carried on to the corruption of the public health, morals or safety; or a place resorted to by idle, dissolute, vicious or disorderly persons for the purpose of concocting depredations on society. It must have some of the above elements; from which it follows, that it must have some of the elements of a public nuisance.

In the case under consideration, the contention of appellee is that The Poudre Valley Club is a disorderly house for the reason that it is kept for an unlawful purpose, to wit, the violation of the prohibition ordinance of the city above quoted.—*Smith v. Com.*, 6 B. Mon. (Ky.) 21; *Cheek v. Com.*, 79 Ky. 359; *Hickey v. State*, 53 Ala. 514; *State v. Williams*, 30 N. J. L. 102; and 9 Am. & Eng. Enc. Law (2d ed.) 515, note 4, are cited in support of this contention.

The text of the citation from the Encyclopedia is as follows:

"A house that is a common resort for the commission of criminal offenses of any kind, common law or statutory, is disorderly, and a nuisance at common law, and it can make no difference that each criminal act there committed may be punishable. This rule has been repeatedly recognized."

*Hickey v. State, supra,* turned upon the sufficiency of an indictment for a nuisance, in which it was held, that keeping open a store for the purpose of purchasing goods which the proprietor has reason

to believe are stolen, but which may not be, does not constitute the offense, for it is not a crime for one to purchase goods which he believes to have been stolen, unless they were in fact stolen.

In *Smith v. Com., supra,* the court said: "The habitual perpetration of the prohibited offenses in a house kept for the purpose constitute the house a public nuisance, as it tends in a greater degree to the spread of the evil which was intended to be prohibited by these enactments. * * * So the keeping of a grocery where practices, by a certain class of the community (slaves) are habitually indulged which have been prohibited by the legislature, as of evil tendency to the public, must be deemed a public nuisance."

In *State v. Williams, supra,* a house was held to be disorderly because of the habitual sale of liquor on Sunday in violation of the law, the court saying: "A house where the law is habitually violated is, if a place of public resort, a nuisance."

In *Cheek v. Com., supra,* a house kept for the sale of pools upon horse races was held a disorderly house, and a nuisance at common law, because it encouraged persons in large numbers, the public generally, to violate the statute against betting.

This review of the authorities cited in support of appellee's contention shows that in every case, the house condemned as a disorderly house, was a place of common resort by the public, for the habitual perpetration of practices prohibited by law.

A private club to which members only are admitted, cannot be said to be a common resort, and there is no law of this state which prohibits the drinking of intoxicating liquors.

It is possible that the evidence in this case, under proper instructions, might have justified a conviction for a violation of the prohibition ordinance

above quoted, but it wholly fails to convict appellant of the offense of keeping a disorderly house, within the definition of that term as above stated.

The instructions to the jury were in line with the theory of the prosecution and were prejudicial to appellant, for which reason the judgment must be reversed.                                         *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CASWELL concurring.