[No. 6250.]

## WALT ET AL. v. THE PEOPLE.

1. **Jury—In County Court—How Selected—**The provisions of sections 2603 et seq., Mills' Stats., are not exclusive. By secs. 1458, 2611, Mills' Stats., and sec. 2 of the act of April 6, 1891 (Laws 1891, 249), the county court may summon a jury to try a criminal information, by open venire.—(139)

2. **Criminal Law—Information—**Where an information under sec. 1323, Mills' Stats., charges, in the language of the statute, the keeping of a disorderly house "for the encouragement of idleness, drunkenness and other misbehavior," the prosecution will not be permitted to show that gaming or fornication were encouraged there; but the omission to charge that these disorders were encouraged does not impair the sufficiency of the information.—(140)

Duplicity—That the information also avers the selling of intoxicating liquors and procuring persons to come together "for the purpose of drinking, tippling and other misbehavior" does not make it vulnerable to the charge of duplicity.—(141)

Affidavit—The affidavit required by sec. 1432h, 3 Mills' Stats., need not aver that the affiant is a competent witness in the cause.—(140)

3. Criminal Law—Disorderly House—A place of public resort where illegal practices are habitually encouraged and carried on, e. g., the sale of intoxicating liquors in violation of law, tippling and drinking at pleasure, is a disorderly house though no profanity is indulged in and no loud noises, whereby neighbors or those passing are disturbed.—(143)

*Error to Larimer County Court* — Hon. C. V. BENSON, Judge.

Mr. O. N. HILTON, Mr. LYMAN PORTER, Mr. CÆSAR A. ROBERTS, for plaintiff in error.

Hon. WILLIAM H. DICKSON, attorney general, Mr. GEORGE D. TALBOT, assistant attorney general, Hon. J. T. BARNETT, attorney general, Mr. J. M. BRINSON, assistant attorney general, Mr. JAMES G. ROGERS, assistant attorney general, for the people.

Mr. JUSTICE WHITE delivered the opinion of the court:

Under § 1323, Mills' Ann. Stats., the district attorney filed an information against the defendants in the county court of Larimer county charging that they, on or about the 4th day of April, 1907, "did then and there unlawfully keep and maintain a common ill-governed and disorderly house, to the encouragement of idleness and drinking and other misbehavior, unlawfully selling therein malt, vinous and spiritous liquors to divers persons, unlawfully causing and procuring certain and divers persons to come together therein for the purpose of drinking, tippling and other misbehavior, contrary to the form of the

statute in such case made and provided, and against the peace and dignity of the same people of the State of Colorado.''

The information was verified by the district attorney upon information and belief, and was supported by the positive affidavit of H. G. McMillin, to the effect that the facts stated therein were true, and that the offense charged was committed of his own personal knowledge.

The McCreery-Walt Drug Company, a corporation, occupied a certain building under a lease in the city of Loveland, in which it conducted a general drug store. The plaintiffs in error were the officers of said corporation, and had personal charge and supervision of the drug store. The building was divided into three compartments; the front or first occupied by the drug store proper; back of the main room was a storage room, and back of this was another room with chairs, tables and a bar, supplied with the usual equipments of such. Over this bar, there was habitually sold to the public generally, whisky, beer and other spiritous, vinous and intoxicating liquors under the name of ''Chicago,'' ''short and long,'' ''No. 19,'' ''No. 20,'' and various obscene names. Such liquors were sold by the glass, the pint, and the bottle, and some carried away in large quantities, etc. Usually customers were served by a bartender, but at other times they were served by one or other of the defendants. Numbers of people were assembled there at times, buying and drinking liquors, and all, more or less, under its influence.

Before the trial began, a challenge was presented to the array of the panel, because, as alleged, the jurors were not selected in accordance with § 2603 et seq., Mills' Ann. Stats. A motion to quash the information on the ground that it stated no offense

known to the law, was interposed and overruled. A trial was had to a jury, resulting in a verdict of guilty as charged. Motion for new trial was interposed and overruled, and the defendants were each sentenced to serve sixty days in the county jail. It is to reverse that judgment that this suit is prosecuted here.

The contention that the jury was not selected according to law is not meritorious. The matter involved has often been considered and passed upon by this court. It is held that the statutes relative to the selection of jurors do not make the method there provided exclusive.—*Mackey v. People,* 2 Colo. 16; *Giano v. People,* 30 Colo. 20.

Section 2606, 3 Mills' Ann. Stats., points out how a regular panel of jurors may be secured for the county court, and § 2611, Mills' Ann. Stats., provides that, if jurors shall not be drawn and summoned for the county court as provided in the act, and a jury is required, the court shall nevertheless have the power to summon a jury by open venire. It, therefore, appears that the selection of the panel of jurors in the case at bar falls clearly within the provisions of the statutes and the decisions of this court.—§ 2611, Mills' Ann. Stats., *supra;* § 1458, Mills' Ann. Stats.; *Bd. Co. Comrs. v. Brown,* 2 Col. App. 473; *Imboden v. People,* 40 Colo. 142, 153, 156.

It is argued that the information is not verified nor supported by the affidavit of some creditable person showing probable cause.

Under § 1432, Mills' Ann. Stats., it is required that an information be subscribed by the district attorney or his deputy as informant, and where the defendant has not had or waived a preliminary examination, there shall be filed with the information an affidavit of some creditable person verifying the information upon the personal knowledge of affiant that the offense was committed.

The basic affidavit verifying the information in question is in the same form and of the same substance and effect as was the affidavit verifying and supporting the information in the case of *Walker v. The People*, 22 Colo. 415, and it was there held sufficient. It is unnecessary for the affidavit to recite that affiant is "a competent witness to testify in the case." His competency will be presumed until the contrary appears. Besides, the entire matter is fully considered and passed upon in *Ausmus and Moon v. The People*, decided at this term. The procedure under consideration constituted a compliance with the requirements of the act authorizing prosecutions by information.

It is next argued that, though the information charges, in the language of the statute, the keeping of a disorderly house, it further sets forth the specific acts constituting the disorder, and having so pleaded, the people are bound thereby, and that such acts do not constitute said offense within the meaning of the law. That a plea which attempts to allege the specific facts constituting the crime must allege sufficient to establish the complete offense, admits of no argument. The rule, however, in no wise affects the information in question. Having charged the offense in the language of the statute, and set forth the specific acts constituting the disorder, the effect thereof was to limit the proof. Under the pleading, the people would not be permitted to show that the house was kept and maintained "to the encouragement of gaming," nor "to the encouragement of fornication." These are not specified in the information. Other elements constituting the offense are, and the proof must be and was limited to them. The information sufficiently charges the defendants with keeping a common, ill-governed and disorderly house within the terms of the statute.

It is further urged that the information is duplicitous. We do not consider it vulnerable to this objection. Several specifications of different ways in which the particular law may be violated do not constitute duplicity.—§ 1450, Wharton's Criminal Law.

In *State v. Williams*, 30 N. J. Law 103. 107, it is said:

"The fighting, cursing, gambling, tippling, etc., said to be necessary to make a house a nuisance, are all, or most of them, crimes, and punishable as such. The offense of keeping a disorderly house or nuisance, consists not in the fact that the keeper commits any of these crimes himself, but that he permits his house to be made a nuisance to the neighborhood by suffering the commission of these crimes there, whether by himself or others, is immaterial. Surely the fact that he himself engages in the commission of them does not render him less guilty, nor is the defendant punished twice for the same offense. He may be punished for each violation of the liquor law, and also for keeping a resort for violators of the law to the detriment of the public morals."

The fact that the information charges the offense of keeping a common, ill-governed and disorderly house and specifies the unlawful sales of liquor therein as the particulars constituting the disorder, in no wise renders the information duplicitous. It charges but one offense—the keeping of "a common, ill-governed and disorderly house, to the encouragement of idleness and drinking."

Plaintiffs in error contend that this court, in the case of *Mossman v. The City of Fort Collins*, 40 Colo. 270, 90 Pac. 605, held that illegal sales of liquor are not sufficient, under any circumstances, to support the charge of keeping "a common, ill-governed and disorderly house," under the statute.

In this we think they are in error. That case

decides that a private club to which members only are admitted, cannot be said to be a common resort, and that there is no law in this state which prohibits the drinking of intoxicating liquors. After reviewing numerous authorities in that case, the court defines a disorderly house as follows:

"It must be a place of public resort, or a place frequented by the public, kept or maintained so as to disturb or annoy the public, the neighborhood, or passers-by; or a place where illegal or immoral practices are habitually carried on to the corruption of the public health, morals or safety; or a place resorted to by idle, dissolute, vicious or disorderly persons for the purpose of concocting depredations on society."

The house kept by defendants falls clearly within this rule. It was "a place of public resort, and frequented by the public," where illegal practices were habitually carried on to the corruption of the public morals and safety.—§ 1120, Bishop's Criminal Law, states the rule, that:

"If one draws together persons to commit petty offenses with him, and renders his house the place of the common commission of them by congregating numbers, surely this is to make a disorderly use of it, and it becomes a disorderly house. Such a house disturbs the neighborhood, corrupts the morals of the young, obstructs governmental order, and in other respects is an evil of the same sort that a more familiar form of disorderly house is, and whether the people assemble in a mass or come one after another, only a single one or two presenting themselves at a time, the effect is the same."

An examination of the statute, § 1323 *supra,* discloses that it deals with many offenses against public morality. The particular offense of keeping "a common, ill-governed and disorderly house," has for

its essential elements one or more of the following: It must be "to the encouragement of idleness"; or to the encouragement of "gaming"; or to the encouragement of "drinking"; or to the encouragement of "fornication"; or to the encouragement of other "misbehavior" which, of course, must be of similar character. Now, the character of a house is fixed and determined by the character of the persons congregating there and the nature of the acts which take place therein. The house is "ill-governed" if it be habitually not well-governed; that is, if the law be habitually not there observed; and it is disorderly if the restraints of order and law are habitually violated; it is then offensive to good morals and public decency. Selling therein liquors to certain and divers persons there congregating for the express purpose of drinking and tippling is certainly to the encouragement of "idleness and drinking," and if the sales be unlawful, habitual and to the public generally, makes of the place "a common, ill-governed and disorderly house" within the meaning of the law.

The keeping of a house in which the community are habitually allowed to assemble and buy whisky, sold in violation of law, and tipple and drink at pleasure, is calculated to not only corrupt their morals, to lead them to insubordination and vice, but it tends materially to annoy the public, to uproot the conscience of the people, to implant in the hearts of men a disrespect and contempt for the law, and thus subvert the foundations of government. A house in which such practices are encouraged and indulged, though no cursing or swearing or noise is made whereby the neighbors or passers-by are disturbed, is nevertheless a disorderly house.—§ 1119, Bishop's Criminal Law; 3 Wharton's Criminal Law, § 384.

Plaintiffs in error quote from *Mossman v. The City of Fort Collins, supra,* as follows:

"This review of the authorities cited in support of appellee's contention shows that, in every case, the house condemned as a disorderly house was a place of common resort by the public, for the habitual perpetration of practices prohibited by law."

And then argue that a legitimate drug store can not be said to be "a common resort by the public for the habitual perpetration of practices prohibited by law." The argument has no application to the case at bar. It was not the drug store proper, but a particular room under the same roof, that became and was "a place of common resort by the public for the habitual perpetration of practices prohibited by law." No one contends that isolated sales in the drug store, incident to that business, though such sales were unlawful, would give the drug store the character of a disorderly house. It was the habitual perpetration of petty criminal offenses in the room or place kept for that purpose and open to the public that constituted it "a common, ill-governed and disorderly house."—*Smith v. Com.,* 6 B. Mon. 21; *Cheek v. Com.,* 79 Ky. 359; *State v. Williams, supra.*

It was such acts that fixed its status as a rendezvous for persons disposed to violate the rules of society. For each person presenting himself as a buyer from one knowingly unauthorized to sell, became a *particeps criminis* in the act of selling.— § 1168, Mills' Ann. Stats. And the word "house," used in the term, "disorderly house," may mean a single room in a house or building, or any place used as a shelter for disorderly conduct.—*State v. Garity,* 46 N. H. 61.

The instructions given to the jury were upon the theory here announced, and fairly covered the facts of the case. The instructions requested by

plaintiffs in error and refused by the court were sufficiently embodied in those given, or were not applicable under the law as here declared.   Under the facts as disclosed by this record, the conviction was proper, and the judgment is affirmed.    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.