Argued December 5, decided December 12, 1911.

## BACHELORS' CLUB v. CITY OF WOODBURN.

[119 Pac. 339.]

INTOXICATING LIQUORS — MUNICIPAL REGULATIONS — VALIDITY — "REGULATE."

1. Under Woodburn Charter (Sp. Laws 1899, p. 538) c. 4, § 5, authorizing ordinances deemed expedient to suppress intemperance and to regulate the sale or disposition of liquors, an ordinance restricting the right to sell intoxicants to registered pharmacists upon *bona fide* prescriptions for disease, is a valid "regulation" and not a "prohibition."

INTOXICATING LIQUORS—"SALES"—WHAT CONSTITUTES—CLUBS.

2. Transactions whereby an incorporated club issues coupon books to its members at a fixed price redeeming the coupons in liquors carried by the club constitute sales, though no profits result to the club, since it is no defense to a charge of unlawfully disposing of liquor that the sale was made at a loss.

INTOXICATING LIQUORS—VALIDITY OF ORDINANCE.

3. An ordinance, providing punishment for conducting places where liquors are unlawfully sold or disposed of, and defining such places to be disorderly houses, is a valid regulation.

MUNICIPAL CORPORATIONS—ORDINANCE—SEARCHES AND SEIZURES.

4. An ordinance of the City of Woodburn, authorizing search for and seizure of property kept for unlawful use, is void for want of charter authority.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE MCBRIDE.

Plaintiff claims to be a social club incorporated for the mutual benefit and social enjoyment of its members, and brings this suit to enjoin the city of Woodburn from enforcing certain city ordinances, respecting the traffic in intoxicating liquors, on the alleged ground that they are void and not authorized by the charter. The provisions of the charter germane to the issues here presented are as follows:

"Section 3. At the first regular election under the charter the legal voters of the city of Woodburn may vote upon the question of licensing the sale of intoxicating liquors, but the same shall not be voted upon unless petitioned therefor by at least fifty resident freeholders of said city. At such election the ballot used shall be printed in the following form: 'City of Woodburn— Election to authorize licensing of saloons. For................ Against................ The voter at such election shall express his will by putting a mark or cross in the appropriate space on said ballot; provided, however, that after the question of issuing such license shall have been once determined by the legal voters of said city it shall not be submitted again unless petitioned for by at least fifty resident freeholders of the said city of Woodburn; provided, further, that if a petition as above provided be

presented to the common council of said city signed by at least fifty resident freeholders asking that the question of issuing such license be again submitted to the legal voters of the city of Woodburn, the common council shall submit the question to the legal voters at the next general municipal election following the presentation of the petition for that purpose, and if at any of said elections a majority of the legal voters, as defined by this act, be in favor of such license to issue it shall be the duty of the common council forthwith to issue such license to any applicant therefor; provided, however, that such applicant shall pay the amount required for such license and present to the common council a good and sufficient bond in the sum of $1000 with two or more sufficient sureties to be approved by the council, conditioned that such applicant will keep an orderly house and that he will comply with all the requirements of this act and of the ordinances of the city of Woodburn and the laws of the State of Oregon."

Section 4 of Chapter 10 reads as follows:

"Section 4. Any person who shall violate any of the provisions of this act, or the ordinances hereunder, for the violation of which no punishment has been provided herein, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by fine not to exceed $100, or he may in default of the payment of such fine be imprisoned in the city jail one day for every $2.00 of such fine."

By Section 5, Chapter 4, of the charter of Woodburn (Sp. Laws 1899, p. 538) the council is given power to pass such ordinances as it shall deem expedient for the suppression of vice and intemperance, and to license and regulate the vending or disposing of intoxicating liquors. On February 7, 1912, the city council adopted the following ordinance, which is ordinance No. 287:

"Section 1. That it shall be unlawful for any person, firm, company, corporation, club or society, or any agent or employe of any person, firm, company, corporation, club or society or any member of any firm, corporation or society, directly or indirectly, to keep, sell, give or

furnish any spirituous, vinous, malt, liquors, hard cider, near beer or other like so called soft drinks, to any person within the corporate limits of the city of Woodburn, or to keep the same in any lodge rooms, club house, club rooms, or any other place within the city of Woodburn, than at a drug store and by a licensed pharmacist, and the same shall not be sold, given or furnished by such pharmacist to any person for any purpose other than medicinal, scientific or sacramental purposes, nor shall the same be sold, given or furnished only upon the prescription of a licensed and practicing physician, or ordained minister for sacramental purposes.

"Sec. 2. That it shall be unlawful for any person falsely to represent himself or any other person to be sick or afflicted with any disease whatever, for the purpose of obtaining a prescription, or that he is an ordained minister, for the purpose of obtaining any of the intoxicating liquors or beverages mentioned in this ordinance.

"Sec. 3. Any person violating any of the provisions of this ordinance upon conviction thereof before the recorder's court of the city of Woodburn, Oregon, shall be fined not less than $50.00, nor more than $100.00, in default of the payment of such fine, be confined in the city jail until such fine be paid, not to exceed one day for each two dollars of such fine.

"Sec. 4. That ordinance No. 284 entitled 'An ordinance prohibiting the sale, giving, or furnishing intoxicating liquors, hard cider, and near beer to any person within the corporate limits of the city of Woodburn, and to provide a punishment therefor,' passed by the council January 3, 1911, be and the same is hereby repealed.

"Sec. 5. Inasmuch as there is urgent need of the foregoing legislation for the protection of the peace, safety and health of the city of Woodburn, an emergency is hereby declared to exist, and this ordinance shall be in full force and effect from and after its approval by the mayor."

On March 21, 1911, ordinance No. 307 was adopted and reads as follows:

"Section 1. That it shall be unlawful for any person, firm, company or corporation, or the agent, or employe of any person, firm, company or corporation, directly or

indirectly, to keep, run or operate or to abet, aid or assist in keeping, running or operating any house, room, or building where illegal gaming or gambling is carried on, or where persons congregate or frequent for the purpose of drinking alcoholic or intoxicating liquors, or where any illegal act is promoted, indulged, carried on, tolerated, sanctioned or acquiesced in within the corporate limits of the city of Woodburn, Oregon. Any person violating any of the provisions of this ordinance shall be deemed guilty of maintaining a disorderly house, and upon conviction thereof before the recorder's court of the city of Woodburn, Oregon, shall be fined not less than $50.00 nor more than $100.00, and in default of the payment of such fine be confined in the city jail until such fine be paid, not to exceed one day for each two dollars of such fine. Provided that this ordinance shall not apply to druggists selling, giving or furnishing alcoholic or intoxicating liquors for medicinal purposes upon the prescription of a practicing physician or to an ordained minister for sacramental purposes.

"Sec. 2. Inasmuch as the city of Woodburn is in urgent need of the foregoing legislation for the protection of the peace, safety, and health of the city, an emergency is hereby declared to exist and this ordinance shall take effect and be in force from and after its approval by the mayor."

On April 7, 1911, ordinance No. 309 was adopted, and it reads as follows:

"Section 1. The recorder of the city of Woodburn, Oregon, is hereby authorized to issue a search warrant, directed to the marshal or any peace officer of the city of Woodburn, Oregon, commanding him to search for personal property at any place within the city of Woodburn, and bring it before the recorder. When the property is in the possession of any person, with intent to use it to commit a violation of any provision of any ordinance of the city of Woodburn, where a fine is provided for such violation, or in the possession of another to whom he may have delivered it, for the purpose of concealing it or preventing its being discovered, in which case it may be taken on the warrant from the possession of such person, or of the person to whom he may have

so delivered it, or from any house or other place occupied by them or under their control, or either of them.

"Sec. 2. A search warrant cannot be issued but upon probable cause, shown by affidavit, naming or describing the person, and describing the property and the place to be searched.

"Sec. 3. The recorder must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and take their deposition in writing, and cause them to be subscribed by the parties making them.

"Sec. 4. Thereupon if the recorder be satisfied that there is probable cause to believe in the existence of the grounds of the application he must issue the warrant, which may be in substantially the following form: In the Name of the City of Woodburn, Oregon: To the Marshal or any Police Officer of the City of Woodburn, Oregon, Greeting: Information on oath having been this day laid before me (stating the particular grounds of the application, according to section 1) you are therefore hereby commanded, at any time in the day or night, to make immediate search on the person of A. B. (or in the house situated, describing it or in any other place to be searched, with reasonable particularity, as the case may be) for the following property (describing it with reasonable particularity), and if you find the same, or any part thereof, to bring it forthwith to me at (stating the place). Dated at Woodburn, Oregon, this ........day of............, 19.....

"Sec. 5. When complaint is made on oath or affirmation before the recorder, that the complainant believes, and has reasonable cause to believe, the ordinances in relation to cruelty to animals has been or is being violated, in, at, or near any particular building, place or location, such recorder shall, if satisfied that there is reasonable cause for such belief, issue a search warrant, authorizing the marshal or any police officer of the city of Woodburn, Oregon, to search such building, place or locality.

"Sec. 6. In the execution or service of a search warrant, the officer has the same powers and authority in all respects, to break open any door or window, to use all necessary and proper means to overcome any forcible resistance made to him, or to call any other person to his aid, that he had in the execution or service of a warrant of arrest, or that he or any sheriff or constable has

in the execution or service of a warrant of arrest under the laws of the State of Oregon.

"Sec. 7. When the officer takes property under the search warrant, he must give a receipt for the property taken, specifying it in detail, to the person from whom he takes it, or in whose possession it is found, or in the absence of any such person he must leave it in the place where he found the property.

"Sec. 8. When the officer to whom the warrant is delivered takes property under the warrant he must retain it in his possession, subject to the order of the recorder to whom he is required to return the proceeding.

"Sec. 9. A search warrant must be executed and returned to the recorder within ten days from its date, unless the recorder, before the expiration of such time, shall by indorsement thereon, extend the time for five days. After the expiration of the time herein prescribed, the warrant unless executed is void.

"Sec. 10. The officer must forthwith return the warrant to the recorder and deliver to him a written inventory of the property taken made publicly or in the presence of the person from whose possession it was taken, and of the applicant for the warrant, if they be present, 'I. A. B., the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all the property taken by me on the warrant.'

"Sec. 11. The recorder must thereupon, if required, deliver a certified copy of the inventory to the person from whose possession the property was taken and to the applicant for the warrant.

"Sec. 12. If the person from whose possession the property was taken controvert the grounds of issuing the warrant, the recorder must proceed to examine the matter by taking testimony in relation thereto.

"Sec. 13. If it satisfactorily appear that the property taken is not the same property as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the recorder must cause it to be restored to the person from whom it was taken.

"Sec. 14. When a person charged with violating any provision of any ordinance of the city of Woodburn, Oregon, is supposed by the recorder before whom he is

brought to have upon his person a dangerous weapon or anything which may be used as evidence of the commission of a violation of any provision of any ordinance, the recorder may direct him to be searched in his presence and direct the weapon or other thing to be retained, subject to his order.

"Sec. 15. When any goods or things are taken on a search warrant the manufacture, sale or use of which are prohibited by any of the ordinances of the city of Woodburn, Oregon, the recorder before whom they are brought must direct the officer to·destroy them, which direction the officer must obey and make return thereof on the warrant.

"Sec. 16. Inasmuch as there is urgent need of the foregoing ordinance for the immediate preservation of the peace, health and safety of the city of Woodburn, Oregon, an emergency is hereby declared to exist, and this ordinance shall take effect and be in full force from and after its approval by the mayor."

On February 11, 1911, ordinance No. 300 was adopted. It is as follows:

"Section 1.    That it shall be unlawful for any person, corporation or common carrier, or any agent of any person, corporation or common carrier to deliver within the corporate limits of the city of Woodburn, Oregon, any spirituous, vinous, fermented or malt liquors or hard cider or near beer to any person, firm or corporation, except to a registered pharmacist.    Any person, or agent of any person, firm, or corporation or common carrier violating any of the provisions of this section, upon conviction thereof before the recorder's court of the city of Woodburn, Oregon, shall be fined not less than $25.00 nor more than $100.00 and in default of the payment of such fine be committed to the city jail until such fine be paid, not to exceed one day for each two dollars of such fine.

"Sec. 2. Inasmuch as the city of Woodburn is in urgent need of the foregoing legislation for the protection of the peace, health and safety of the city, this ordinance shall be in full force and effect from and after its approval by the mayor."

The complaint alleges that, pursuant to ordinance No. 287, Stangel, the recorder, has repeatedly convicted and fined the officers of the club, and their cases are now pending in the circuit court upon appeal; that under ordinance 309, upon the complaint of the mayor and upon a warrant issued by the recorder, an organized force of police officers and informers with force and violence entered the clubrooms and ejected the officers and members, seized the property and effects of plaintiff, took the same into the possession of the city, and threaten further proceedings of a like nature, whereby plaintiff will be vexed and annoyed and its property rendered valueless, and it and its officers will be vexed and harassed by a multiplicity of suits. Defendants answered substantially justifying under the ordinances above quoted and by denials as to other matters, among other things denying the *bona fides* of the organization of the club and alleging that its principal object is the unlawful sale of liquors. On the trial there was a decree for plaintiff, and defendants appeal.                              MODIFIED.

For appellants there was a brief with oral arguments by *Mr. Hiram Overton* and *Mr. George G. Bingham.*

For respondent there was a brief over the names of *Messrs. Carson & Brown,* with an oral argument by *Mr. Thomas Brown.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. Previous to November, 1909, the sale of intoxicating liquors was licensed in the city of Woodburn. At the election then occurring the city in common parlance voted "dry," and thereafter such sales were prohibited. Existing licenses expired in January, 1910, and coincidently with their expiration a number of citizens were suddenly seized with a desire to improve their social and mental condition by means of a social club, and the

"Bachelors' Club" was incorporated, ostensibly for that purpose. Whether or not its membership was confined to unmarried men, as the name would seem to indicate, the club became at once an exceedingly popular institution and soon attained a membership of about 80 persons. The method of initiation was simple. · A person desiring membership signed an application blank, and his qualifications were passed upon by the trustees, and if found worthy he paid a fee of $6 and was admitted. Of this amount $1 was for membership and the other $5 was for a book of coupons, entitling the holder to receive a certain quantity of any refreshments the club might have in stock. A room on the ground floor of a building formerly used as a saloon was rented, a bar established, and stewards provided, and last but not least, a stock of liquors, cigars, and soft drinks laid in for the comfort and delectation of the members. The club secured a United States' internal revenue license for the sale of liquors and proceeded to furnish its members with liquors, cigars, and other refreshments, when called for. There is no evidence that the club ever did anything toward the moral or mental improvement of its members, beyond furnishing them liquors, cigars, and soft drinks in exchange for coupons, and we conclude from the testimony that the principal object of the corporation was the disposal of liquors to its members. It is claimed that the provision of the charter authorizing the council to license and regulate the sale or disposal of intoxicating liquors does not include the power to prohibit their sale. Whether this is correct or not is of no moment in this case, as the council has not attempted by this ordinance to prohibit the sale of liquors in Woodburn, but has confined the right to make such sales to registered pharmacists and upon a *bona fide* prescription for disease. This is not prohibition, but regulation. Taking this in connection with the plenary power granted the council, by

section 5, *supra*, to pass and enact such ordinances as it shall deem expedient to suppress intemperance, we are of the opinion that the ordinance is valid.

2. The contention that these sales were not sales of liquors, but that it was the property of the members of the club, cannot be sustained. The club is a corporation and is itself an artificial person and, as such, owns the liquors purchased by it. The act of taking a member's money in gross, and allowing him to spend it for liquors in detail as his appetite may require, does not alter the fact that in its ultimate analysis the transaction is a sale; nor does the fact that no profit is made by the transaction alter its nature. It is not a defense to a charge of unlawful disposal of liquor for the seller to show that he sold it for less than it cost him.

3. Ordinance No. 307 is not void. A house where the unlawful sale or disposition of intoxicating liquor is carried on is a disorderly house. *People* v. *Clark*, 1 Wheel. Cr. C. (N. Y.) 288; *Cheek* v. *Commonwealth*, 79 Ky. 359.

4. Ordinance No. 309 is void. The right of the citizen to be protected against unreasonable search and seizure is a very valuable one, and we have been cited to no provision of the charter of Woodburn that confers upon the municipality the right to exercise this high prerogative. Ordinance No. 300 is confessedly void, both for want of authority in the charter to enact it, and because it interferes with interstate commerce. It does not appear, however, that any attempt has been made to enforce it, and we are not, therefore, required to make any order in relation to it.

The decree of the circuit court enjoining prosecution under ordinances 287 and 307 is reversed, but the decree will stand as to No. 309. The appellant will recover costs and disbursements in this court, and neither party will recover costs and disbursements in the circuit court.

MODIFIED.